(No. 25595.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRISON PARKER, Plaintiff in Error.

*Opinion filed October 11, 1940—Rehearing denied Dec. 4, 1940.*

IRVING BREAKSTONE, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

Harrison Parker was adjudged guilty of criminal contempt in the criminal court of Cook county, and sentenced to imprisonment in jail for a period of ten days. He has sued out a writ of error, arguing, among other things, that by the judgment of conviction he has been deprived of his constitutional right of free speech.

The information charged Parker with writing two letters to the members of the Cook county grand jury, which was then in session. The letters are set forth in the information. Parker's answer, filed after his motion to dismiss was overruled, admitted writing the letters, but denied they constituted contempt of court or that they were written with the intention of showing contempt.

The letters are quite lengthy and are couched in exceedingly vicious and inflammatory language. They state, in substance, that *The Chicago Tribune*, a newspaper, Robert R. McCormick, its president, Thomas J. Courtney, State's

attorney of Cook county, John S. Clark, the Cook county assessor, and a firm of attorneys which represented *The Chicago Tribune,* had entered into a criminal conspiracy to defraud the State of Illinois of revenue by the illegal omission from the Cook county tax rolls of personal property of *The Chicago Tribune.* In the first letter Parker charged *The Chicago Tribune* had already "stolen" from the State approximately forty-three million dollars. In the second letter the amount was stated to be one-hundred million dollars. The letters also charged the above parties, or some of them, with perjury, subornation of perjury, bribery, malfeasance in office, and specifically charged *The Chicago Tribune* with "influencing, intimidating or bribing the courts to prevent a trial on the law and the facts" and with "giving orders" to the courts. One of the letters states that McCormick, "under whose directions this enormous steal has been effected, is a coward, a liar, a cheat, a thief, a court-fixer and an all-around scoundrel who, after he has cunningly robbed the State that shelters and protects him, will pollute the Channels of Justice to hide his thefts." Parker also charged McCormick with having "railroaded" two innocent men to prison and with having cheated the State out of every penny of inheritance tax due from the estate of his mother. He stated that Courtney had refused to prosecute the crimes because of his own complicity in them. He also compared Courtney with a State's attorney in Los Angeles, California, who "was playing fast and loose with the organized thieves of Los Angeles" and who was indicted by an alert and law-respecting grand jury, tried and convicted. He also referred to the corruption which had been prosecuted in New York, Connecticut, Kansas City and Louisiana. Parker stated three attempts had been made to murder him, but neither the allurements of fortune nor the terrors of death could deter him from doing his duty. He offered to appear before the grand jury and present legal proof of the charges with reference to the conspiracy, "which

is mildly described above," to rob the homeowners of Cook county. He also warned the grand jury that great pressure would be brought to bear upon it to ignore his letters.

The position of the People is that defendant was in contempt of court for voluntarily communicating with the grand jury at all, and that, in any event, it was a contempt of court to address the grand jury in a manner so as to leave the grand jurors' minds in such a state that they could not fairly and without prejudice investigate the charges made. Defendant contends any citizen has the right, without any previous authorization, to communicate in writing to the grand jury, informing it of evidence of crime in his possession which he offers to produce before the grand jury, on a subject not then before it for consideration, and charging that the State's attorney refuses to bring the evidence before it because of his own complicity in the crime. He also contends his motive was praiseworthy; that he did not intend to be contemptuous or seek to influence the action of the grand jury but to give it information, if desired, and that the language of the letters is calculated to aid, rather than impede, the action of the grand jury in the performance of its duties. The criminal court found Parker guilty of "acts and conduct directly calculated to impede, embarrass and obstruct the court in the due administration of justice."

There is no authority in this State as to when a communication to a grand jury is a contempt of court. In *Storey* v. *People,* 79 Ill. 45, the defendant was tried for contempt of court in publishing articles censuring the grand jury and questioning its integrity in returning three indictments aganst defendant. We held that they were not a contempt of court, though libelous, since the publications did not concern matters then pending before the grand jury, but were about completed acts and concerned matters on which the grand jury had already discharged its duty. We laid down as the test of when a publication concerning

a grand jury was a contempt of court whether the articles had a tendency to directly impede, embarrass or obstruct the grand jury in the discharge of any of its duties remaining to be discharged after the publications were made.

The authorities in other jurisdictions cannot be harmonized. Some courts hold that a stranger has a right voluntarily to bring facts to the knowledge of the grand jury. (*In re Lester,* 77 Ga. 143; *State* v. *Stewart,* 45 La. Ann. 1164.) On the other hand, Wharton, in his treatise on Criminal Practice and Pleading, eighth edition, section 307, states: "Sending an unofficial volunteer communication to the grand jury, inviting them to start, on their own authority, a prosecution, is a contempt of court, and a misdemeanor at common law." To this same effect is *Commonwealth* v. *Crans,* 2 Pa. L. J. 172.

Mr. Justice Field announced the same rule in his charge to the Federal grand jury, (30 Fed. cases 992,) which is frequently quoted. He charged: "You will not allow private prosecutors to intrude themselves into your presence and present accusations. Generally such parties are actuated by a private enmity and seek merely the gratification of their personal malice. If they possess any information justifying the accusation of the person against whom they complain they should impart it to the district attorney who will seldom fail to act in a proper case, but if the district attorney should refuse to act they can make their complaint to a committing magistrate before whom the matter can be investigated and if sufficient evidence be produced of the commission of the public offense by the accused, he can be held to bail to answer to the action of the grand jury."

Mr. Justice Field is also quoted by Wharton on Criminal Procedure, tenth edition, section 1295, as follows: "There has hardly been a session of the grand jury of this court for years at which instances have not occurred of personal solicitation to some of its members to obtain or

prevent the presentment or indictment of parties. And communications to that end have frequently been addressed to the grand jury filled with malignant and scandalous imputations upon the conduct and acts of those against whom the writers entertain hostility, and against the conduct and acts of former and present officers of this court and of previous grand juries of this district. All such communications were calculated to prevent and obstruct the due administration of justice, and to bring the proceedings of the grand jury into contempt. 'Let any reflecting man', says a distinguished judge, 'be he layman or lawyer, consider of the consequences which would follow, if every individual could, at his pleasure, throw his malice or his prejudice into the grand jury room, and he will, of necessity, conclude that the rule of law which forbids all communication with grand juries, engaged in criminal investigations, except through the public instructions of courts and the testimony of sworn witnesses, is a rule of safety to the community. What value could be attached to the doings of a tribunal so to be approached and influenced? How long would a body, so exposed to be misled and abused, be recognized by freemen as among the chosen ministers of liberty and security? The recognition of such a mode of reaching grand juries would introduce a flood of evils, disastrous to the purity of the administration of justice, and subversive of all public confidence in the action of these bodies.' "

We think the reasoning of Mr. Justice Field is sound and that he announced a wise principle of law. The letters written by defendant, Parker, are a glaring example of the evil against which that rule is directed. They are replete with malignant accusations against private citizens and public officials and are, in all probability, the result of personal enmity. Couched in the language they are, they could serve no useful purpose. Rather they expose the grand jury to the danger of being misled and abused by one motivated

by personal animosity. If such communications with the grand jury were permitted and had their desired effect, many innocent people would be indicted solely because of personal enmity or the malice of one seeking revenge.

It cannot seriously be argued that defendant, by these letters, was not seeking to influence the action of the grand jury. We cannot agree that the rule forbidding such communications should be limited to cases pending before the grand jury.

Defendant also contends the information is insufficient to charge a contempt of court. It incorporates the letters written by Parker and they show on their face that the writer is in contempt of court. Nor is defendant entitled to an acquittal upon his sworn answer, under the rule announced in *People* v. *Seymour*, 272 Ill. 295. Here the answer admits the writing of the letters and merely denies an intention of being contemptuous. Such an answer does not entitle him to an acquittal.

Defendant contends the judgment should be reversed because there was no malevolent intention to impede, embarrass or obstruct the administration of justice. This contention is based on Parker's statement in his answer denying such an intention. A disavowal, or denial under oath, of intent to insult the court or to slander or deter the grand jury in its duty, should be considered by the court in mitigation of the offense, but it cannot be considered as a complete justification. (*People* v. *Severinghaus*, 313 Ill. 456.) It is not claimed this part of the answer was not considered by the court in mitigation of the offense. The contention cannot be sustained.

The judgment is affirmed. *Judgment affirmed.*