STATE of Minnesota ex rel. J. J. WILD, M. D., Ph. D., Appellant,

v.

James C. OTIS, Esquire, Respondent.

STATE of Minnesota ex rel. J. J. WILD, M. D., Ph. D., Appellant,

v.

Oscar R. KNUTSON, Esq., et al., Respondents.

Nos. 46898, 46882.

Supreme Court of Minnesota.

Aug. 12, 1977.

J. J. Wild, pro se.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Thomas Jensen, Sp. Asst. Atty. Gen., Briggs & Morgan and Leonard J. Keyes, St. Paul, for respondents.

Considered and decided by SHERAN, C. J., and YETKA, SCOTT, WINTON,* and PREECE,* JJ., without oral argument.

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

SHERAN, Chief Justice.

■ These consolidated appeals raise the issue of whether a private citizen may commence and maintain private prosecutions for alleged violations of the criminal law. We hold that he may not.

Prior to commencing the present action, plaintiff, J. J. Wild, requested the county attorneys of Ramsey and Hennepin Counties to approve criminal complaints which he had prepared against defendants, but the respective county attorneys refused to prosecute. Plaintiff then tried unsuccessfully to persuade the grand juries of the two counties to issue indictments. Finally, plaintiff filed complaints himself in an attempt as a private citizen to prosecute defendants.

The complaint against defendants filed in Ramsey County alleged a violation of the criminal laws against conspiracy to commit a crime, Minn.St. 609.175, subd. 2, and corruptly influencing a legislator, § 609.425. The complaint against defendant Mr. Justice James C. Otis in Hennepin County alleged a violation of the criminal law against perjury, § 609.48. The complaints requested that the named defendants be convicted and sentenced according to law. The respective complaints were dismissed by the district courts of Ramsey and Hennepin Counties, and these appeals from judgments followed.

■ 1. A preliminary issue is presented by the affidavits of prejudice which plaintiff has filed against the special panel of justices considering his appeal.

Section 3.42, and the commentary thereto, of the A. B. A. Standards of Judicial Administration, Standards Relating to Appellate Courts (Approved Draft, 1977), state the appropriate standards and procedures to be followed in the case of challenges such as this:

"3.42 Disqualification of Judges.

"A judge of an appellate court should be subject to disqualification on the grounds set forth in the Code of Judicial Conduct recommended by the American Bar Association, and in any case in which the judgment under review is one by a court in whose decision he participated as judge in a lower court.

"*Commentary*

"An appellate judge should be subject to challenge for cause on the same grounds as a trial judge, and also when an appeal involves a review of his own decision. The most difficult problem concerns the procedure to be employed. As in the challenge of a trial judge, if the challenge is sufficient on its face and any reasonable doubt of the judge's disinterestedness is suggested, the judge may be expected to disqualify himself. If he does not do so, in the case of a trial judge factual issues relating to disqualification should properly be determined by another judge. See § 2.32, Standards Relating to Trial Courts. In the case of an appellate judge, however, that procedure would subject the judge to decision of his disinterestedness by official peers with whom he may continue to serve in a collegial capacity in deciding the case. Moreover, because an appellate court decides questions of law rather than fact, the question of an appellate judge's 'bias' is often practically indistinguishable from the question of his views on the law, which are not properly subject to disputation through the recusal procedure. Given these complications, it is better that the question of recusal be decided by the judge himself. If he is a judge of an intermediate appellate court, there remains the remedy of appeal from a decision in which he participates; if he is a judge of a supreme court, reliance must be placed on his recognition that a court should not only be disinterested but that it should appear to be so.

"In some jurisdictions, provision for peremptory challenge of a trial judge is permitted. See Commentary to § 2.32(b), Standards Relating to Trial Courts. This procedure is inappropriate in the case of an appellate judge. In the collegial decision-making of an appellate court an individual judge's purely personal views are of less significance than they would be in a trial court and he is subject to collegial

restraint should he be inclined to act on them; an appellate judge has few occasions for exercising the broad discretion reposing in a trial judge; and in appellate litigation there is no occasion for the intense personal interaction between the judge and the lawyers and litigants that may occur in a trial court. Moreover, an appellate judge's established views on law and justice, at least up to a point, are a proper element of the contribution he makes to the function of an appellate court, particularly in the development of the law. A peremptory challenge might easily be abused to exclude a judge solely because a litigant disagreed with his views."

■ The three justices of the supreme court and the two district court judges assigned to the hearing of this matter pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2, have applied these standards for recusal and have determined that the affidavit of prejudice filed by plaintiff against them is without justification. District Court Judge Warren A. Saetre, originally assigned to consider this case, has recused for personal reasons.

2. As stated earlier, the issue which plaintiff raises in his appeal is whether a private citizen may commence and maintain private prosecutions for alleged violations of the criminal law.

In answering this question, we start with Rule 17.01, Rules of Criminal Procedure. This rule contemplates that felonies are to be prosecuted by either indictment or complaint. The rule does not mention or allude to any right of private citizens to commence and maintain criminal prosecutions privately.

Rule 2.02, Rules of Criminal Procedure, governing prosecution by complaint, provides as follows:

"A complaint shall not be filed or process issued thereon without the written approval, endorsed on the complaint, of the prosecuting attorney authorized to prosecute the offense charged, unless such judge or judicial officer as may be authorized by law to issue process upon the offense certifies on the complaint that the prosecuting attorney is unavailable and the filing of the complaint and issuance of process thereon should not be delayed."

This rule is in accord with A. B. A. Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft, 1971), § 2.1, which provides: "The prosecution function should be performed by a public prosecutor who is a lawyer subject to the standards of professional conduct and discipline."

■ The comment to Rule 2.02, Rules of Criminal Procedure, states that "Rule 2.02 leaves to other laws the question of the available remedy when a local prosecutor refuses to approve a complaint." One obvious available remedy is for the aggrieved citizen to try to appear before the grand jury and persuade it to indict. While a citizen does not have a right to appear before the grand jury, he is free to attempt to get the grand jury to take action, and under Rule 18.04, Rules of Criminal Procedure, the grand jury can permit an aggrieved citizen to appear as a witness for this purpose. The grand jury under Rules 18.01 and 18.03 consists of 16 to 23 members, randomly selected from a cross section of the county. Permitting citizens to take complaints directly to this body serves as a kind of "safety valve" and has much to commend it. See, commentary to § 2.1 of the A. B. A. Standards Relating to the Prosecution Function.[1]

■ There are other remedies available to an aggrieved citizen when a prosecutor refuses to commence a prosecution:

(a) Minn.St. 388.12 provides:

"The judge of any district court may by order entered in the minutes at any term of court appoint an attorney of such court to act as, or in the place of, or to assist, the county attorney at such term,

---

1. In this case, as we stated earlier, plaintiff tried to get the respective grand juries of Ram-sey and Hennepin Counties to indict but was unsuccessful.

either before the court or grand jury. The person so appointed shall take the oath required by law of county attorneys and thereupon may perform all his duties at such term of court, but shall receive no compensation where the county attorney is present at such term, except by his consent, and to be paid from his salary." Arguably, a private citizen could petition the district court for action pursuant to this statute and the court could appoint a special prosecutor if it decided that this was necessary. See, Comment, 65 Yale L.J. 209, 215. See, also, the discussion in the commentary to § 2.1 of the A. B. A. Standards Relating to the Prosecution Function. There may be constitutional objections to this statute, but that is not an issue which we need to decide. We merely cite this statute as one of the possible alternatives available in the case of allegedly unjustified prosecutorial inaction.

(b) Another possible remedy is provided by Minn.St. 8.01, which reads as follows:

"The attorney general shall appear for the state in all causes in the supreme and federal courts wherein the state is directly interested; also in all civil causes of like nature in all other courts of the state whenever, in his opinion, the interests of the state require it. Upon request of the county attorney he shall appear in court in such criminal cases as he shall deem proper. Whenever the governor shall so request, in writing, he shall prosecute any person charged with an indictable offense; and in all such cases he may attend upon the grand jury and exercise the powers of a county attorney."

Under this statute a citizen could appeal to the governor, who then might order the attorney general to commence prosecution.

■ (c) A third potential remedy is mandamus. The problem with mandamus from the standpoint of an aggrieved citizen is that the decision whether to initiate a particular prosecution is discretionary [2] and

therefore normally beyond the scope of mandamus. For a full discussion, see, Note, 13 Am.Crim.L.Rev. 563, 585.

■ In mentioning these alternatives, we do not mean to recommend them to plaintiff. Rather, we cite them merely to demonstrate that the approach taken in Minnesota is (a) to give the grand jury and the county attorney the authority to commence prosecutions (with each theoretically operating as a check on the unjustified inaction of the other), and (b) to provide safety-valve alternatives for use in extreme cases of prosecutorial inaction.

In arguing that a private citizen has a right to commence and maintain a criminal prosecution, plaintiff makes many of the arguments that are made in the leading law review article on the subject. What plaintiff neglects to mention is that the authors of the comment concluded that legislative authority was needed for a system of permitting private prosecution. Comment, 65 Yale L.J. 209, 233. Further, the model statute provided by the authors of the comment, like Minn.St. 388.12, authorizes appointment by the court of a substitute attorney and does not permit the aggrieved private citizen to prosecute the action himself.

■ Plaintiff has not cited and we have not found any authority justifying the instant actions. This is not surprising because to permit such prosecutions would entail grave danger of vindictive use of the processes of the criminal law and could well lead to chaos in the administration of criminal justice.

We are satisfied that the district courts acted properly in dismissing the attempted prosecutions.

Affirmed.

Mr. Justices OTIS, ROGOSHESKE, PETERSON, KELLY, TODD, MacLAUGHLIN, and KNUTSON took no part in the consideration or decision of this case.

---

2. See, *State v. Mayhood,* Minn., 241 N.W.2d 803 (1976), where we stated that there may be cases where a prosecutor properly may decline to prosecute even where evidence exists which would support a conviction. We in no way imply that the evidence would have supported convictions in this case.