**In re Petition of Peter B. THOMAS.**

Supreme Judicial Court of Maine.

Argued June 12, 1981.

Decided Sept. 4, 1981.

**504** ■ ▬▬▬▬▬▬▬▬

John Gleason, Deputy Atty. Gen., Wayne S. Moss, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

E. Babette Bryan (orally), Portland, for defendant.

Before McKUSICK, C.J., GODFREY and CARTER, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

On November 26, 1980, Peter B. Thomas, by a petition to the Superior Court, Cumberland County, filed pursuant to 15 M.R.S.A. § 1256, requested permission to appear personally before the grand jury for the purpose of offering evidence which Thomas alleged would show that the Chief of Police and the Corporation Counsel of the City of Portland had committed the crime of "Official Oppression," 17–A M.R.S.A. § 608. Thomas simultaneously asked that state prosecutors be excluded from his presentation. After hearing, the Court denied Thomas's petition. We affirm the judgment of the Superior Court.

Thomas's grievance arises out of the Portland Police Chief's refusal to issue him a concealed weapons permit pursuant to 25 M.R.S.A. § 2031 (Supp. 1980–81).[1] In Thomas's view, this refusal, which is alleged to have been aided and abetted by Portland's Corporation Counsel, violated 17–A M.R.S.A. § 608 (Official Oppression), a Class E crime. In pertinent part, Section 608 declares:

A person is guilty of official oppression if, [first] being a public servant and [second] acting with the intention to benefit himself or another or to harm another, [third] he knowingly commits an unauthorized act which purports to be an act of his office, or knowingly refrains from performing a duty imposed on him by law . . . .

In his petition for permission to present evidence personally to the grand jury, Thomas, acting *pro se*, attempted to set forth a violation of the three elements of the above quoted crime. Impliedly, he alleged that Portland's Chief of Police is a public servant. Expressly, he alleged that the Chief of Police "acted with the intention to benefit himself or another"

in that, being on record of disliking guns, he would use his office to enforce his emotional predilection on this applicant without conformance to the law and so secure the emotional benefit of an unarmed citizenry.

Alleging also the alternative of the second element of the crime, Thomas declared that the Chief of Police "acted with the intention to harm another"

in that my person being subject to reported threats against my person and property, he causes me harm by (a) subjecting me to the capability of reported threats being carried out against me with no defense, (b) subjecting me to possible prosecution for armed defense against the threats being carried out, (c) denial without cause of a statutory privilege under Maine State law, (d) denial of a civil right extended under the penumbra of the Maine State Constitution (Art. 1 § 16) and the U.S. Constitution, Second Amendment.

Finally, Thomas alleged a violation of the third element of the crime thus:

[T]he Chief of Police has knowingly committed an unauthorized act by denying to exercise discretion in consideration of an

1. 25 M.R.S.A. § 2031 provides in pertinent part:

No person shall in a threatening manner display, or shall wear under his clothes, or conceal about his person any firearm, slung shot, knuckles, bowie knife, dirk, stiletto or other dangerous or deadly weapon; except that the chief of police or city marshal of any city or the selectmen of any town may upon written application therefor issue to any legal resident of such city or town of good moral character, a certificate setting forth that such person has been duly licensed to carry such weapon mentioned in the certificate.

application for a concealed weapons permit, the exercise of discretion being mandated by T 25 § 2031 *and* confirmed in *Schwanda v. Bonney*, which commission also constitutes, intrinsically, refraining from performing the duty imposed upon him by law: . . . .

In *Schwanda v. Bonney*, Me., 418 A.2d 163 (1980), we observed that the municipal authorities *must* grant a concealed weapons permit to any applicant who meets the residency and good moral character requirements of 25 M.R.S.A. § 2031. By his allegation that the Chief of Police refused to exercise discretion, Thomas presumably, though not expressly, was charging that the Chief of Police refused to determine whether Thomas was a Portland resident of good moral character.

Thomas further alleged that he requested permission to personally present evidence of "Official Oppression" to the grand jury, because, according to the petition, the State had refused to act in his behalf. The petition expressly grounded the authority of the Superior Court to grant Thomas's request upon 15 M.R.S.A. § 1256, which in pertinent part provides:

> Grand juries shall present all offenses cognizable by the court at which they attend, . . . . Evidence relating to offenses cognizable by the court may be offered to the grand jury by the Attorney General, the district attorney, the assistant district attorney *and, at the discretion of the presiding justice, by such other persons as said presiding justice may permit.* (emphasis added).

The petition was heard by the Superior Court on December 5, 1980. At the outset of the hearing, the Presiding Justice informed Thomas that he was not going to determine the merits of his complaint concerning the alleged violation of law by the reference city officials, declaring: "I'm not going to sit as a Grand Jury." Thereupon, the Justice asked Thomas to address that portion of the petition which stated the State had failed to act in Thomas's behalf. In response, Thomas produced a letter addressed to him from Attorney Lowell

Weeks. The letter advised that (1) acting for Thomas, Attorney Weeks had contacted both the Assistant District Attorney for Cumberland County and an Assistant Attorney General; (2) the Assistant District Attorney felt that it would be difficult, if not impossible, to prove that the Portland Chief of Police had acted with the statutorily required intent; (3) the Assistant Attorney General felt similarly, stating that the Attorney General's Office was in no position to intercede "[because] there appears to be no bad faith exhibited [by the Chief of Police]."

The Superior Court, after reviewing the contents of this letter, declared that it was "exercising its discretion" in denying Thomas's petition. In the course of so doing, the court explained:

> *The Court is fully aware that the statute* [15 M.R.S.A. § 1256] *indicates, in terms of appearing before the Grand Jury, that the Attorney General, the District Attorney, or a person who the Court may feel appropriate should present a matter to the Grand Jury. It's highly unusual and rare that the Court would intercede and interpret what the State has itself determined not to be sufficient for presentation and, in fact, appoint someone else because it does require an appointment, as I understand it, of someone else to act in that capacity.*
>
> *The usual place where that does occur* is when there is a conflict that would appear appropriate and it would appear appropriate, because there would be a conflict with the Attorney General or the District Attorney that another attorney be appointed to so present a matter to the Grand Jury. (emphasis added).

The natural and perhaps intended effect of the Justice's above quoted observation that Section 1256 "require[s] an appointment" of any but the enumerated officials was to dissuade Thomas from approaching the grand jury on his own initiative *after* the court's permission to do so had been formally withheld. Through counsel, Thomas now argues that 15 M.R.S.A. § 1256 "in no way limits the common law right of

a private citizen to present evidence in those situations where judicial approval is denied;" instead, Thomas asserts, Section 1256 merely suggests a mechanism by which a citizen's unconditional right to approach the grand jury may be implemented.

### 1. *Jurisdiction*

■ Before addressing Thomas's contentions, we must initially assure ourselves that there is jurisdiction in the Law Court to entertain this appeal, since we are obliged to do so on our own motion if the question of jurisdiction appears to be in doubt. *See Bacon v. Penney*, Me., 418 A.2d 1136, 1138 (1980). Lack of jurisdiction is always subject to our scrutiny, whether the parties have raised the jurisdictional issue or not, which they have not done in this case. *Desmond v. Persina*, Me., 381 A.2d 633, 638 (1978). Our concern arises by reason of the facial uncertainty relating to whether this appellate proceeding is a criminal or civil appeal. The docket entries indicate that the judgment denying Thomas's petition was entered on December 5, 1980 and that the notice of appeal was filed on January 5, 1981. If we are dealing with a criminal appeal, then the appeal would not be timely, since it was taken more than 20 days after entry of the judgment or order appealed from (Rule 37(c), M.R.Crim. P.), and would have to be dismissed for want of jurisdiction. The limits prescribed by Rule 37(c) for appeals in criminal cases are jurisdictional. *State v. Mower*, Me., 254 A.2d 604, 605 (1969). 15 M.R.S.A. § 2115. If we have to do with a civil appeal, then the instant case is properly before us, even though the notice of appeal was filed 31 days after entry of the pertinent order appealed from, the thirtieth day being a Sunday (Rules 73(a) and 6(a), M.R.Civ.P.).

■ Even though Thomas's petition, if successful, might have ultimately resulted in the initiation of a criminal proceeding in the possible finding of an indictment by the grand jury, we view the present action before the Superior Court "as any other ex parte proceeding" within the meaning of Rule 81(b), M.R.Civ.P., wherein it is provided that the practice in such proceedings, in respects not covered by statute or the Maine Rules of Criminal Procedure, shall follow the course of the common law, but shall otherwise conform to the rules of civil procedure, and review by the Law Court, to the extent that review of such proceedings is available, shall be by appeal or report in accordance with the rules of civil procedure.

Furthermore, it is obvious that Thomas's petition to the Superior Court was in lieu of the ancient writ of mandamus to compel the grand jury to take jurisdiction of his grievance in the face of non-action by the District Attorney and the Attorney General and to compel it to receive information which he could give in connection with the case in his capacity of a private citizen in the role of private prosecutor. Again, pursuant to Rule 81(c), M.R.Civ.P., any relief heretofore available by any of such writs, not available as a review of governmental action under Rule 80B, M.R.Civ.P., may be obtained by appropriate action under the practice prescribed by the rules of civil procedure. Also, under Rule 81(f), M.R.Civ.P., when no procedure is specifically prescribed, the court shall proceed in any lawful manner not inconsistent with the Constitution of the State of Maine, the rules of civil procedure or any applicable statutes.

We hold that the proceedings herein are governed by the rules of civil procedure and that appellate review of the Superior Court judgment of denial of Thomas's petition is within the jurisdiction of the Law Court, the notice of appeal being timely under Rule 73(a), M.R.Civ.P.

### 2. *Interpretation of the statute*

Both counsel for the petitioner and the State have made impressive forays into the history of the grand jury in England and its colonial and post-colonial history in Maine and Massachusetts.[2] Both conclude that

---

2. For matters of interest in the history of grand juries, *see Commonwealth v. McNary*, 246 Mass. 46, 140 N.E. 255, 29 A.L.R. 483 (1923); *In re Pappas*, 358 Mass. 604, 266 N.E.2d 297, at 303 (1971), *aff'd* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *People v. Parker*, 374 Ill. 524, 30 N.E.2d 11 (1940), *cert. denied* 313 U.S. 560, 61 S.Ct. 836, 85 L.Ed. 1520; *Brack v.*

until the year 1953 this State's common law allowed citizens unrestricted access to the grand jury. In 1953, 15 M.R.S.A. § 1256 was enacted. As each side recognizes, the merit of Thomas's position turns on the legislative intent underlying that statute.

The original version of Section 1256, which omitted all mention of citizen access to the grand jury, provided:

> Evidence ... may be offered to the grand jury by the attorney general, the county attorney, the assistant county attorney or any officer of the court, including both judicial officers of subordinate courts within the county and attorneys at law. *Me. Leg. Doc.* No. 1112 (1953).

The Committee on the Judiciary recommended that the original version ought not to pass. What the Legislature subsequently enacted is, in essence, identical with the current version of Section 1256. It provided in pertinent part:

> Evidence ... *may* be offered to the grand jury by the attorney general, the county attorney, the assistant county attorney *and, at the discretion of the presiding justice, by such other persons as said presiding justice may permit.* P.L. 1953, c. 399 (amended by P.L. 1973, c. 567, § 20, which replaced the words "county attorney" with the words "district attorney.") (emphasis added).

■ Thomas asserts that the enacted version is an unadulterated confirmation of the common law. In his view, the above italicized language was meant to facilitate, a citizen's access to the grand jury by enunciating a practicable, possibly preferred, but by no means exclusive procedural device for exercising a still unrestricted right.[3] We disagree. In our judgment, the enacted version represents a legislative compromise between unrestricted citizen access to the grand jury and no citizen access at all. If the Legislature had intended a different result, it would not in plain words have conditioned the presentation of evidence to grand jurors on the prior permission of the presiding justice. Whatever the citizen's rights immediately before the passage of Section 1256 may have been, he can today go before the grand jury as a volunteer witness, if, but only if, he has first obtained the court's permission.[4]

### 3. *Exercise of judicial discretion*

■ In attacking the substance of the judgment under appeal, Thomas asserts:

> The Trial Court erroneously interpreted its discretion as being appropriately exercised *only* in those situations where a conflict appears with the presentation of evidence to the grand jury by the Attorney General or District Attorney. (emphasis added).

The Court stated in its decision that the "usual," not the "only," situation, in which other persons would be appointed to offer evidence before a grand jury, is where an

---

*Wells,* 184 Md. 86, 40 A.2d 319, 156 A.L.R. 324 (1944); *State ex rel. Wild v. Otis,* 257 N.W.2d 361 (Minn. 1977), *cert. denied,* 434 U.S. 1003, 98 S.Ct. 707, 54 L.Ed.2d 746.

**3.** In support of this position, Thomas notes, first, that the pertinent language of Section 1256 uses the permissive word "may" rather than the mandatory "shall" in defining who may offer evidence to the grand jury. Second, Thomas points to the oath demanding secrecy of each juror concerning the "state's counsel, your fellows' and your own." 15 M.R.S.A. § 1252. Because, Thomas urges, this oath is rooted in common law, the reference to "your fellows'" should be construed as meaning "your fellow citizens [who have come to you to offer evidence]" rather than "your fellow jurors [who have deliberated with you upon the evidence offered]."

The State maintains, and we agree, that reference in the oath to "your fellows'" counsel involves no more than the counsel or deliberations of fellow jurors. *See Low's Case,* 4 Me. 439, 446–47, 453 (1827); H. Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* 55 (1967). The State also argues, and again we agree, that by defining who "may" offer evidence to the grand jury, Section 1256 *ipso facto* defines who "may not."

**4.** We need not decide whether the grand jury, in the course of an investigation of its own, may solicit or compel the proffer of evidence from private citizens, pursuant to that statute's mandate that "grand juries shall present all offenses cognizable by the court at which they attend."

attorney general or a district attorney is in a conflict of interest position. Explicitly, the Court then stated that it was exercising its discretion to deny Thomas's petition. The sole question before us is, whether denial of the petition was an abuse of discretion.

The reasoning underlying the presiding Justice's decision, partially quoted already, inferably ran as follows: (1) One of the duties of the Attorney General is to offer to the grand jury evidence of crimes and, in the course of so doing, to judge what evidence is sufficient for presentation. (2) Section 1256 implicitly favors presentation by the Attorney General or a District Attorney because these persons need not seek prior approval of the court, and it is their duty to prosecute criminal cases (5 M.R.S.A. § 199; 30 M.R.S.A. § 502). (3) Barring prejudice or a potential conflict of interest, as where a district attorney or the Attorney General is himself accused of Official Oppression, the judgment of these persons is entitled to deference. (4) The petitioner did not show that the judgment of the assistant district attorney or of the assistant attorney general was prejudiced and, although he stated that he was "prepared to establish the conflict [of interest] on a probable cause [hearing]," he also stated he had "no proof of one." (5) In this case, therefore, the court need not "intercede and interpret what the State has itself determined not to be sufficient for presentation" to the grand jury.

We are satisfied that the presiding Justice did exercise his discretion and, from the totality of the facts in this record, we fail to see any abuse on the part of the presiding Justice in denying Thomas's petition.

■ Section 1256 gives to the citizen having personal knowledge of an indictable offense the opportunity to persuade a justice of the Superior Court that he be permitted to present his evidence to the grand jury so that an indictment could be found against the offender. By the very nature of our criminal system, the discretion thereby vested in the presiding justice needs to be exercised with the greatest circumspection.

First, the justice must be satisfied that the petition on its face alleges sufficient facts to demonstrate a probability, or at least a substantial possibility, that the grand jury will be persuaded to indict. Thomas's petition is tumid, conclusory, and factually insufficient. He alleges, for instance, that the Portland Chief of Police refrained from performing a duty imposed on him by law. But he does not set forth the content of his application for a concealed weapons permit; he does not expressly maintain that the Chief of Police ignored the question of whether he was or was not "of good moral character," *Schwanda v. Bonney, supra*; and he refers to none of the events succeeding the Chief's denial of his weapons permit, which might tend to show personal antagonism of the Chief toward him. Again, Thomas alleges that the Chief by his action was attempting to "secure the emotional benefit of an unarmed citizenry." But he asserts only that his own permit was denied; whether other members of the "citizenry" remain unarmed, solely because of an emotional predilection in the Chief, cannot be discerned from Thomas's averments.

If the presiding justice is satisfied that the petition is facially persuasive, he must next be satisfied that the public interest will be served by allowing the petitioner to present his case to the grand jury. As the United States Supreme Court has observed in another context:

> The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the . . . case, in order to determine whether prosecution would be in the public interest. *United States v. Lovasco*, 431 U.S. 783, 794, 97 S.Ct. 2044, 2051, 52 L.Ed.2d 752, 761–62 (1977).

The Court supplements this observation with a footnote, reading in part:

> The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that evidence may

exist which would support a conviction. Illustrative of the factors which the prosecutor may properly consider in exercising his discretion are:

(i) the prosecutor's reasonable doubt that the accused is in fact guilty;

(ii) the extent of the harm caused by the offense;

(iii) the disproportion of the authorized punishment in relation to the particular offense or the offender;

(iv) possible improper motives of a complainant;

. . . .

*Id.* n. 15, *quoting* ABA Project on Standards for Criminal Justice, *The Prosecution Function* § 3.9(b) (App. Draft 1971).

Where, as here, both an assistant attorney general and an assistant district attorney have already chosen not to go to the grand jury, where the record establishes no prejudice underlying their decisions, and where, under 15 M.R.S.A. § 1256, a justice of the Superior Court is subsequently asked to stand in the shoes of the prosecutor, considerations such as the above necessarily come into play.

There being no showing of error in the handling of Thomas's petition, the entry is:

Judgment affirmed.

All concurring.