851 A.2d 671 (2004)
370 N.J. Super. 406
In the Matter of the GRAND JURY APPEARANCE REQUEST by Larry S. LOIGMAN, Esq.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 2004.
Re-argued June 2, 2004.
Decided June 29, 2004.
*672 Larry S. Loigman, appellant, argued the cause pro se.
H. John Witman III, Deputy Attorney General, argued the cause for respondents, the Attorney General and the twenty-one county prosecutors (Peter C. Harvey, Attorney General, attorney; Mr. Witman, of counsel and on the brief).
Before Judges SKILLMAN, COBURN and WELLS.
The opinion of the court was delivered by COBURN, J.A.D.
The questions presented by this appeal are whether a citizen of New Jersey is entitled to directly communicate to a county grand jury a request to testify about a matter within its jurisdiction and whether the grand jury has a right to receive such communications. Our answer to both questions is yes.

I
The case began informally with a February 18, 2002, letter from appellant, a resident of Monmouth County, to the Monmouth County Grand Jury. He advised the grand jury that he and a client had information about "financial irregularities" in the administration of a public program in one of the local townships, and he asked for permission to appear before the grand jury and present the evidence. He sent a copy of the letter to the Assignment Judge. On April 1, 2002, he wrote to the grand jury again, with a copy to the Assignment Judge, noting that there had been no reply to his previous letter, and asking to be informed whether the grand jury planned to address the issue. On April 5, 2002, the Assignment Judge wrote to appellant that "it is inappropriate for *673 you to be communicating with the [g]rand [j]ury...." He added that appellant should direct his concerns to the County Prosecutor or the Attorney General.
By a letter dated March 24, 2003, appellant asked the Assignment Judge for permission to appear before the grand jury. The judge wrote back promptly, advising appellant to take his information to one of the prosecuting authorities, and adding that
[i]t is not the function of the Assignment Judge, who oversees the [g]rand jury, to be burdened with the task of sifting through countless claims by citizens who believe that illegal conduct is taking place. This is within the province of the Attorney General or the County Prosecutor to resolve.
On May 14, 2003, appellant filed a verified petition in the Law Division asking the Assignment Judge for permission to ask the grand jury to investigate the previously noted matter. The judge denied the petition, adding that to allow direct communication with the grand jury would unduly burden its ability to function. A confirming order was entered, and this appeal ensued.
The notice of appeal was served on the Assignment Judge and the Attorney General, who had not yet appeared in the case. The Attorney General filed a brief with the clerk of the Appellate Division, not on behalf of the Assignment Judge, but for himself. During the first argument, we asked that the Attorney General inform the twenty-one county prosecutors of the case so that their positions could be determined. In a subsequent letter, the Attorney General advised us that he and all the county prosecutors agreed that the Assignment Judge's ruling was correct.

II
Heretofore, the courts of New Jersey have treated a citizen's right to directly ask a grand jury to investigate a matter as unremarkable. Thus, in In re Monmouth County Grand Jury, 24 N.J. 318, 131 A.2d 751 (1957), the Court noted without negative comment that the grand jury's investigation arose when "complaints were received from a citizens' group...." Id. at 321, 131 A.2d 751. And in O'Regan v. Schermerhorn, 25 N.J. Misc. 1, 50 A.2d 10 (Sup.Ct.1946), where the complaint appears to have come from a citizen, Justice (then judge) Ackerson described the grand jury's vast powers as including the power to "investigate ... into all alleged offenses against the criminal law regardless of how the information on which it acts is brought to its attention." Id. at 23, 50 A.2d 10.
Although our courts have not been previously asked to rule on the issue at hand, the majority and better reasoned view elsewhere expressed is that such direct contact is permissible. Wayne R. LaFave & Jerold H. Israel, Criminal Procedure: Criminal Practice Series § 8.4 at 623-24 (West 1984); 1 Wharton's Criminal Procedure § 195 at 934-35 (Torcia ed., 13th ed.1989). See also Wanda Ellen Wakefield, Annotation, Individual's Right to Present Complaint or Evidence of Criminal Offense to Grand Jury, 24 A.L.R. 4th 316 (1983 and Supp.)
Courts adhering to the rule that direct access to the grand jury is wrong frequently rely on a reported grand jury charge given in a federal court in California by Justice Field, while on circuit in 1872. Charge to Grand Jury, 30 F. Cas. 992 (C.C.D.Cal.1872). See, e.g., In re New Haven Grand Jury, 604 F.Supp. 453 (D.Conn.1985); People v. Parker 374 Ill. 524, 30 N.E.2d 11 (1940), cert. denied, 313 U.S. 560, 61 S.Ct. 836, 85 L.Ed. 1520 *674 (1941). However, in 1952, Chief Judge Fee rejected Justice Field's narrow view of the grand jury's authority in a persuasive opinion. United States v. Smyth, 104 F.Supp. 283, 287 n. 1 (N.D.Cal.1952). He concluded that "the grand jurors ... may initiate prosecutions based on information received from persons who have no connection officially with them." Id. at 295. In Frisbie v. United States, 157 U.S. 160, 163, 15 S.Ct. 586, 587, 39 L.Ed. 657, 658 (1895), the Court expressed the proposition in this way:
But in this country the common practice is for the grand jury to investigate any alleged crime, no matter how or by whom suggested to them....
A citizen's right to ask a federal grand jury for permission to appear before it is now expressly protected by statute. 18 U.S.C.A. § 1504, which prohibits attempts to improperly influence a grand juror by written communication regarding pending matters, also provides that "[n]othing in this section shall be construed to prohibit the communication of a request to appear before the grand jury."
In State v. Stewart, 14 So. 143 (La.1893), the court considered a challenge to an indictment based on the testimony of a citizen who had asked the grand jury to let him appear. Rejecting the challenge, the court said that the "witness had the undoubted right to go before the grand jury voluntarily, and disclose his knowledge of the case. As a good citizen, it was his duty to do so." Id. at 145.
In Hott v. Yarbrough, 112 Tex. 179, 245 S.W. 676 (1922), the court held that a letter from a private citizen to the grand jury, alleging the commission of crimes and seeking investigation, was absolutely privileged and could not provide the basis for a libel suit, and it reached that result for the same reason expressed in Stewart, supra.
In King v. Second Nat'l Bank & Trust Co. of Saginaw, Mich., 234 Ala. 106, 173 So. 498, 499 (1937), the court concluded that "[p]ublic policy demands that the citizen, without hazard to himself, may freely bring before the grand jury the fact that a crime has been committed, request an investigation, and furnish such information as he has in aid of the investigation."
In State ex rel. Wild v. Otis, 257 N.W.2d 361 (Minn.1977), cert. denied, 434 U.S. 1003, 98 S.Ct. 707, 54 L.Ed.2d 746 (1978), the court observed that "[w]hile a citizen does not have a right to appear before the grand jury, he is free to attempt to get the grand jury to take action, and ... the grand jury can permit an aggrieved citizen to appear as a witness for this purpose." Id. at 364. The court added that "[p]ermitting citizens to take complaints directly to this body serves as a kind of `safety valve' and has much to commend it." Ibid.
Our Supreme Court has recognized the broad investigatory powers of the grand jury. Speaking for the Court in State v. Doliner, 96 N.J. 236, 475 A.2d 552 (1984), Justice O'Hern described the grand jury in these words:
The grand jury has traditionally occupied a high place in our system of justice. It has always been extended extraordinary powers of investigation and great responsibility for directing its own efforts:
Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical *675 procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."
[Id. at 249, 475 A.2d 552 (quoting United States v. Sells Eng'g, Inc., 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743, 752 (1983)).]
In view of the grand jury's "extraordinary powers of investigation and great responsibility for directing its own efforts[,]" ibid., we find untenable respondents' contention that the grand jury should be prevented from receiving communications from private individuals who seek to bring to its attention wrongful activity within its jurisdiction. Cf. In re Addonizio, 53 N.J. 107, 126, 248 A.2d 531 (1968)(stating that the grand jury "may explore an anonymous charge ... [or] a rumor.") We therefore hold that the grand jury must be informed of appellant's allegations so that it may determine for itself whether an investigation is in order.
In State ex rel. Miller v. Smith, 168 W.Va. 745, 285 S.E.2d 500 (1981), the court upheld the right of citizens to seek appearance before the grand jury, but required that the application be made to the supervising judge:
To fulfill its functions of protecting individual citizens and providing them with a forum for bringing complaints within the criminal justice system, the grand jury must be open to the public for the independent presentation of evidence before it. If the grand jury is available only to the prosecuting attorney and all complaints must pass through him, the grand jury can justifiably be described as a prosecutorial tool.
This ancient body, as a fundamental constitutional institution, must not be fettered or restricted to the degree that it is inaccessible to the citizens it was designed to serve and protect. We therefore hold that, by application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it. This principle of approachability lies in the foundation of the very concept of a grand jury. As with any institution, as it removes itself from the public and becomes inaccessible, it becomes more susceptible to abuse. The grand jury can maintain its accessibility and relevancy only through constant judicial vigilance. If the grand jury is to be a meaningful institution, its integrity must be maintained as an independent body, free from all outside interference and prosecutorial control or direction. This can only be insured by vigilance over the administration of justice, which is the duty of the courts.
[Id. at 504-05 (emphasis added).]
West Virginia is not alone in requiring that access to the grand jury be obtained through the presiding judge. Some courts have found such a mechanism as required by statutes governing the procedures of grand juries, see, e.g., In re Petition of Thomas, 434 A. 2d 503, 507 (Me.1981), while others consider the mechanism to be inherent within the court's supervisory authority over the grand jury. See, e.g., In re Application of Wood, 833 F.2d 113, 116 (8th Cir.1987); Simpson v. Reno, 902 F.Supp. 254, 257 (D.D.C.1995), aff'd, 1996 WL 556625 (D.C.Cir.1996).
We conclude that since the grand jury is subject to the supervision of the Assignment Judge, R. 3:6-1 and -3, *676 any citizen submission directly to the grand jury should be made available to the judge by the grand jury clerk when it is received. The judge may then determine whether he or she should instruct the jury on the matter. In this case, since the communication has already been intercepted, the Assignment Judge shall submit it to the grand jury with such instructions as he deems appropriate.
Reversed and remanded for further proceedings consistent with this opinion.