In re Petition for DISCIPLINARY ACTION AGAINST Jill Eleanor CLARK, a Minnesota Attorney, Registration No. 196988.

No. A12–0326.

Supreme Court of Minnesota.

July 24, 2013.

Martin A. Cole, Director, Craig D. Klausing, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Jill Eleanor Clark, Golden Valley, Minnesota, pro se.

## OPINION

PER CURIAM.

The issue presented in this case is whether respondent Jill Clark should be transferred to disability inactive status. A referee appointed by this court made findings and recommended that Clark be transferred to disability inactive status. Because Clark is unable to competently represent clients due to mental health

issues, we transfer Clark to disability inactive status.

## I.

■ The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Jill Clark. We referred the matter to a referee. Shortly before the evidentiary hearing was scheduled to begin in June 2012, Clark, through her husband, asked that the hearing be postponed because Clark was in the hospital. After receiving submissions from the parties regarding how to proceed, the referee filed a recommendation to transfer Clark to disability inactive status, stay the disciplinary proceedings, and refer the matter to the referee to make findings regarding Clark's disability.[1]

On October 26, 2012, we referred the matter back to the referee to make additional findings and recommendations on the nature of Clark's disability, whether she could assist in her defense, and whether she could competently represent clients. We also ordered Clark to submit to an independent medical examination and that any of Clark's medical records would be marked as confidential and not disclosed to the public.

According to the referee, Clark "marginal[ly]" complied with the requirement to submit to an independent medical examination. Clark met with the appointed expert, Dr. Mary Kenning. Clark, however, did not present herself on December 4, 2012, to take the Minnesota Multiphasic Personality Inventory II (MMPI–II) because she was scheduled to have oral surgery and told Dr. Kenning that she anticipated a lengthy recovery. Despite telling Dr. Kenning this, Clark was able to be interviewed by her chosen expert on three different days during this same time period and to complete an MMPI–II administered by her expert on December 5, 2012.

The referee held an evidentiary hearing on December 7, 2012. On December 20, 2012, the referee filed findings and recommendations relating to Clark's disability. The referee found that Clark was disabled because of mental health issues and that she could not competently represent clients as of December 7, 2012, and continuing for the foreseeable future.

The referee made extensive findings about the serious mental health issues that Clark experienced during 2012 and how her mental health issues impacted her life, her cognitive abilities, and her emotional state.[2] The referee found that Clark

---

1. On July 23, 2012, Clark filed a motion to disqualify all members of this court from this matter. On October 15, 2012, she filed a request seeking a date for her recusal motion to be heard. Members of this court are subject to the standards in the Code of Judicial Conduct governing recusal. *See* Minn.Code of Judicial Conduct, Rule 2.11; *State ex rel. Wild v. Otis,* 257 N.W.2d 361, 363 (Minn. 1977). However, "[i]t has long been the practice of this court to honor decisions of its individual members as to whether to participate in a pending proceeding." *In re Modification of Canon 3A(7) of the Minn.Code of Judicial Conduct,* 438 N.W.2d 95, 95 (Minn. 1989) (order); *accord Wild,* 257 N.W.2d at 363–64. Each member of the court has applied the applicable standards for recusal and

made an individual determination whether to participate in this case. In light of the court's practice, Clark's motions are denied.

2. Portions of the referee's findings about Clark's mental health issues contain detailed information about Clark's recent medical history and are based on information from Clark's medical records, which were admitted as confidential exhibits at the evidentiary hearing. We granted, in part, Clark's motion to place the referee's findings and recommendations under seal and ordered several paragraphs of the referee's findings and recommendations placed under seal. Because our previous order remains in effect, this opinion contains only a general discussion of Clark's

"began to experience emotional or mental health issues at least, by her own admission, by January 2012." Clark's symptoms worsened during the spring. Beginning on June 21, 2012, Clark was hospitalized for several days.

Neither Clark nor her attorney participated in a June 21, 2012, telephone conference with the referee. Instead, Clark's husband participated. He informed the referee about Clark's hospitalization. Clark's husband told the referee that he was concerned for Clark's physical and emotional well-being. He explained that Clark had not slept in 7 days and that he had locked Clark out of her e-mail accounts and computers and had restricted her business telephone access so that she would not be able to deal with clients. In a June 27, 2012, written submission to the referee, Clark stated that in mid-June she began to experience "extreme symptoms" that affected her mental and physical abilities and that on June 24, 2012, she was "experiencing debilitating physical and neurological symptoms."

The referee found that Clark had another severe episode in August 2012 and fled town for approximately 10 days. During this episode, Clark traveled to several states and was briefly hospitalized. Clark's family convinced her to go to a hospital for evaluation. The preliminary diagnosis Clark received from this hospital indicated several mental health conditions.

Clark had another severe episode in September 2012. After experiencing fear and panic, Clark fled on a 3–week cross-country trip. Clark was hospitalized again in late September 2012. At the time she was admitted, Clark indicated that she was experiencing severe psychiatric symptoms. Clark's discharge diagnosis listed several mental health conditions. Clark was pre-

scribed medication for her mental health conditions, and Dr. Barry Rittberg recommended that she not work until January 7, 2013.

After her discharge from the hospital, Clark did not see Dr. Rittberg again. Instead, she saw another psychiatrist, who also diagnosed her with mental health conditions. Clark began seeing a therapist.

The opinions of two experts were offered at the evidentiary hearing. The court-appointed independent medical examiner, Dr. Kenning, diagnosed Clark with a mental health condition. Dr. Kenning further opined that Clark was currently able to assist in her defense and that Clark would be able to competently represent clients upon her recommended return from disability leave in January 2013.

Clark also presented an evaluation conducted by psychologist Dr. Jack Schaffer, who saw Clark in December 2012 and prepared a written report. Dr. Schaffer testified that Clark was not presenting with any major psychological problems at the time of his assessment. He agreed that, in the past, Clark had presented with rather severe psychological symptoms that likely interfered with her ability to practice law, but he concluded that she had made remarkable progress over the preceding month.

Dr. Schaffer further opined that Clark could assist in her defense and could competently represent clients. Dr. Shaffer believed that when Clark returned to work, she should receive accommodations to reduce her exposure to stress. Dr. Schaffer, however, was not certain that Clark could manage her stress and explained that, if she did not, her previous behaviors could reappear.

The referee found that Clark has a disability due to serious mental health issues.

mental health issues and the referee's findings        regarding Clark's disability.

According to the referee, Clark was clearly disabled at the time of the June 2012 evidentiary hearing, based on the anxiety and stress she was experiencing that culminated in her emergency hospitalization in June 2012. As a result, she could not handle her clients' needs or her own needs at that time.

The referee also found that Clark's actual condition had been difficult to diagnose. The referee concluded that this was partially due to Clark's conduct. Clark saw at least five different psychiatrists in the second half of 2012, and either failed to accept diagnoses she received from these psychiatrists or "almost totally failed, at least until perhaps the last few weeks, to follow through with any of the recommended treatment." During this same time, the referee found that Clark's "symptoms exacerbated to the point that she twice went 'on [the] run,' leaving her home (and her clients) while she was in emotional crisis." The referee noted that even Dr. Rittberg, whose diagnosis Clark most accepted, said she could not return to work until January 7, 2013. The referee concluded that Clark was disabled as of December 7, 2012, the date of the evidentiary hearing.

The referee further found that Clark was able to assist in her defense in the disciplinary proceedings as of December 7, 2012. The referee based this finding on the progress Clark had made in her counseling since the last time she was discharged from the hospital and her demonstrated participation in the evidentiary hearing.

Finally, the referee found that, as of December 7, 2012, and continuing into the foreseeable future, Clark could not competently represent clients. The referee acknowledged that this conclusion was contrary to the opinions of Dr. Kenning and Dr. Schaffer. The referee explained that he could not "concur" with their opinions because,

> [o]ver the past five months, Ms. Clark has had five hospitalizations, two episodes of being on [the] run, and, by her own actions [sic] admission, almost total inability to represent clients. She has experienced extraordinary anxiety and stress which has resulted, in varying degrees, in adverse effects to her cognitive abilities, perception, judgment and ability to function.

The referee rejected the idea that "all of these stresses and symptoms over a six to twelve month time period can be resolved with four or five therapy sessions, when her prior demonstrated follow through with treatment recommendations was marginal at best."

While Clark asserted that she could practice law with "reasonable accommodations," the referee found it was not clear that the accommodations would or could be implemented, nor was it clear that they would reduce Clark's anxiety and stress, given the stressful nature of a litigation practice like Clark's. The referee also explained that the underlying disciplinary action appears to have been "the major factor" causing Clark's anxiety and stress, and that the disciplinary proceeding would continue if Clark was not placed on disability inactive status. The referee concluded,

> given the duration and severity of [Clark's] symptoms, the variability of her diagnoses and treatment follow-up, the severity of her behaviors, the relative recency of treatment progress, and her recognition that she needs to do something such as accommodations to reduce her stress, and, most importantly, the increased stress if these proceedings are immediately continued, ... [Clark] cannot competently represent clients [currently] and continuing for the foreseeable future.

The referee recommended that: (1) Clark be transferred to disability inactive status because she cannot competently represent clients; (2) the underlying disciplinary action be stayed; and (3) if Clark is not placed on disability inactive status, that her ability to practice law be subject to several conditions.

Following the referee's December 20 findings and recommendations, we issued an order to show cause directing the parties to file memoranda addressing why Clark should not be temporarily suspended until we issued a ruling on those findings and recommendations. Clark did not respond to that order. On January 16, 2013, by order, we temporarily suspended Clark from the practice of law.

In our January 16 order, we established a time frame for Clark to file any transcripts she had ordered of the proceedings before the referee.[3] We also established a briefing schedule for the parties. No transcripts have been filed. Clark also did not file a brief responding to the referee's December 20 findings and recommendations.[4]

The Director, however, filed a brief. He contends that the referee's findings are conclusive because no transcript was ordered and that the referee's findings are supported by ample evidence in the record. The Director urges the court to adopt the referee's recommendations and transfer Clark to disability inactive status.

## II.

"A lawyer whose physical condition, mental illness, [or] mental deficiency … prevents the lawyer from competently representing clients shall be transferred to disability inactive status." Rule 28(a), Rules on Lawyers Professional Responsibility (RLPR). Under the rule, merely having a disability does not subject a lawyer to being transferred to disability inactive status. However, a disability that renders a lawyer unable to competently represent clients requires that the lawyer be transferred to disability inactive status. *See In re Ginsberg,* 690 N.W.2d 539, 555 (Minn.2004) (noting that the "standard for lawyer disability is disability that 'prevents the lawyer from competently representing clients' " (quoting Rule 28(a), RLPR)).

■ We note that Rule 28, RLPR, contains no standard of review for our review of a referee's findings and conclusions regarding an attorney's disability and the attorney's ability to competently represent clients. We further note that, while we have transferred many lawyers to disability inactive status, we have not had occasion in our case law to articulate the standard of review we apply to a referee's findings and conclusions concerning disability and a lawyer's ability to competently represent clients. We have, however, established standards of review for a referee's findings and conclusions regarding

---

**3.** In a December 26, 2012, filing, Clark stated that she was ordering a transcript of the December 7 hearing and a December 3 telephone conference.

**4.** On June 6, 2013, Clark filed what she captioned as a special appearance and notice of stay. In it, Clark contended this matter was stayed pursuant to Minn.Stat. § 333.06 (2012). This statute applies to people who operate a business under an assumed name but who have not filed a required certificate with the Minnesota Secretary of State. *Id.* If

such a person files a civil action against someone, the defendant "may plead such failure in abatement of the action," and the action is automatically stayed until the certificate is filed. *Id.* It is not clear from this filing if Clark contends the Director has been improperly operating under an assumed name or if she contends that she has improperly conducted her law practice under an assumed name. Regardless, this statute does not apply to this matter.

professional misconduct. These standards differ, depending on whether a transcript has been ordered. If neither party orders a transcript, the referee's "findings of fact and conclusions shall be conclusive." Rule 14(e), RLPR. If a transcript is ordered, we "give great deference to the referee's findings and conclusions and will uphold them if they have evidentiary support in the record and are not clearly erroneous." *In re Paul*, 809 N.W.2d 693, 702 (Minn.2012); *see also In re Murrin*, 821 N.W.2d 195, 207 (Minn.2012) ("A referee's findings are clearly erroneous only if we are left with the definite and firm conviction that a mistake has been made." (citation omitted) (internal quotation marks omitted)).

■ Here, neither party has ordered a transcript of the proceedings before the referee. We need not decide which standard of review to apply to the referee's findings and conclusions on the nature of Clark's disability and her ability to competently represent clients because, even applying the less-deferential standard of review, we would uphold the referee's findings and conclusions—that (1) Clark is disabled, and (2) as of December 7, 2012, and for the foreseeable future, Clark is not able to competently represent clients—as not clearly erroneous.[5]

There is overwhelming evidence in the record that Clark has a serious mental health condition. Clark's medical records indicate that she suffered from extreme stress and anxiety during long stretches of 2012, that this stress and anxiety severely affected her cognitive abilities and judgment, that she twice went "on [the] run" because she was having an emotional crisis, and that she was hospitalized three times because of these problems. Clark did not dispute before the referee that she has mental health issues. And Clark continues to state she has a disability.[6] The referee's finding and conclusion that Clark was disabled as of December 7, 2012, is not clearly erroneous.

■ The referee's findings and conclusions that Clark cannot competently represent clients as of December 7, 2012, and for the foreseeable future are also supported by the record. The referee based these findings and conclusions on the severity and duration of Clark's symptoms, the variability of her diagnoses, her lack of treatment follow-through, the relative recency of her treatment progress, and the increased stress Clark would experience if the disciplinary proceedings continued. There is ample support in the record for the referee's findings on all these issues. The referee reasonably rejected Dr. Rittberg's opinion, given in October 2012, that Clark would be able to return to work in early January 2013 because Clark did not see Dr. Rittberg again after she was discharged from the hospital. The referee also provided a detailed explanation why he rejected the opinions of Dr. Kenning and Dr. Schaffer that Clark would be able to competently represent clients when her medical leave ended in early January 2013.

---

5. While no transcript has been filed, the majority of the referee's findings and conclusions are based on information from the exhibits at the hearing, which are part of the record before the court. Given the unique procedural history of this case, including Clark's failure to file a memorandum challenging any of the referee's findings and conclusions, the court can apply the clearly erroneous standard without reviewing the transcript. In reaching this conclusion, we do not suggest that a clearly erroneous standard of review should be applied in any other context in which this court, or any other appellate court, does not have a transcript of the relevant hearing.

6. For example, before the June 2013 oral argument scheduled in this case, Clark sought accommodations for her disability during the oral argument.

Moreover, the referee heard Dr. Schaffer testify and rejected as not credible his testimony that Clark had overcome all of her problems in the month before the evidentiary hearing. *See In re Fett,* 790 N.W.2d 840, 845 (Minn.2010) (stating that the court will defer to the referee's findings, especially when the findings rest, in part, on issues of "demeanor, credibility, or sincerity"). Considering the evidence as a whole, the referee's findings and conclusions that Clark cannot competently represent clients as of December 7, 2012, and for the foreseeable future are not clearly erroneous. .

■ "A lawyer whose physical condition, mental illness, [or] mental deficiency . . . prevents the lawyer from competently representing clients *shall be* transferred to disability inactive status." Rule 28(a), RLPR (emphasis added). Having determined that the referee's findings and conclusions that Clark is disabled and that she is unable to competently represent clients because of her disability are not clearly erroneous, our rules clearly provide that Clark be transferred to disability inactive status.

■ The referee further recommended that the underlying disciplinary proceeding be stayed. We typically stay the underlying disciplinary proceeding when a lawyer is transferred to disability inactive status. *See, e.g., In re Collins,* 659 N.W.2d 754, 754–55 (Minn.2003) (order); *In re Bieter,* 599 N.W.2d 828, 828 (Minn.1999) (order).

Since the disciplinary petition was filed in this case, the Director has received additional complaints regarding Clark. The Director requests that the court not only stay this disciplinary proceeding, but that it also stay any additional investigations of new or existing complaints until Clark has been reinstated to active status as a lawyer. We have stayed disciplinary investigations of new or existing complaints in previous cases in which we have transferred an attorney to disability inactive status. *In re Harnois,* 791 N.W.2d 539, 540 (Minn.2010) (order); *In re Gardner,* 725 N.W.2d 95, 96 (Minn.2006) (order); *In re Verbrick,* 687 N.W.2d 634, 634 (Minn. 2004) (order); *In re Rustad,* 645 N.W.2d 85, 85 (Minn.2002) (order). We conclude that it is appropriate to do so in this case as well. As a result, this disciplinary proceeding and all current or future disciplinary investigations of complaints against Clark will be stayed.[7]

The Director also requests that we require Clark to wait at least 1 year before petitioning for reinstatement to active status. *See* Rule 28(d), RLPR (stating that a lawyer placed on disability inactive status may petition for reinstatement). The Director argues that, given Clark's "history of seeing multiple psychiatrists, receiving provisional diagnoses from them, not accepting those diagnoses or failing to follow through with the recommended treatment," this requirement "would at least take away one incentive to avoid such treatment." We have not typically required a lawyer transferred to disability inactive status to wait a certain length of time before petitioning for reinstatement to active status. We see no reason to do so in this case.

Accordingly, we order that:

1. Effective immediately, respondent Jill Eleanor Clark is transferred to disability inactive status under Rule 28, RLPR. During the period of time that respondent is on disability inactive status, respondent may not render legal advice, discuss legal

---

7. Two of Clark's clients filed motions to intervene in the disciplinary proceeding. Because we are staying the disciplinary proceeding, we will not rule on these motions at this time.

matters with clients, or otherwise engage in the practice of law.

2. Respondent shall comply with Rule 26, RLPR (requiring notice of transfer to disability inactive status to clients, opposing counsel, and tribunals).

3. The pending disciplinary proceeding concerning respondent and all current or future disciplinary investigations of complaints against respondent are stayed until such time as respondent petitions for reinstatement to the practice of law under Rule 28(d) and Rule 18, RLPR. Upon the filing of a petition for reinstatement to active status, unless otherwise ordered by this court, the parties shall proceed under the procedures in Rule 18 and first address whether respondent is "fit to resume the practice of law." Rule 28(d), RLPR. If respondent is reinstated to the practice of law, the Director shall then proceed to complete the pending disciplinary proceeding and investigations that are stayed by this order.

GILDEA, C.J., took no part in the consideration or decision of this case.