## Case No. 18,255.

### CHARGE TO GRAND JURY.

[2 Sawy. 667.] [1]

Circuit Court, D. California. Aug. 22, 1872.

FUNCTIONS AND POWERS OF GRAND JURY—LIMITATION ON POWER OF INVESTIGATION—PRESENTMENT AND INDICTMENT — OBLIGATION OF SECRECY.

[1. To justify the finding of an indictment, the grand jury must believe that the accused is guilty. They should be convinced that the evidence before them, unexplained and uncontradicted, would warrant a conviction by a petit jury.]

[2. A grand jury of the United States sitting in California has no such general authority to inspect the books of officers of the United States as is exercised by the grand juries of the state in relation to the books of the state officers.]

[3. A grand jury of the United States is limited, as to the scope of its investigations, (1) to such matters as may be called to its attention by the court; or (2) may be submitted by the district attorney; or (3) may come to the knowledge of the grand jurors in the course of their investigations of the matters thus brought before them, or from their own observations; or (4) may come to their knowledge from the disclosures of their associates on the grand jury. They should not allow private prosecutors to intrude themselves into their presence and present accusations.]

[4. Since the passage of the act of 1872 (17 Stat. 158), to prevent and punish the obstruction of the administration of justice in the federal courts, it is the duty of a federal grand jury to present any person who, in violation of this law, and for the purpose of influencing their action, sends to them any letter or communication relating to any matter pending be-

---

[1] [Reprinted by permission.]

fore them, or pertaining to their duties, without a previous order of the court.]

[Cited in Hurtado v. California, 110 U. S. 556, 4 Sup. Ct. 301; Ex parte Bain, 121 U. S. 10, 7 Sup. Ct. 786.]

[5. It is the duty of the grand jurors to keep their deliberations secret. They are not at liberty to state even that they have had a particular matter under consideration. They should allow no one to question them as to their own individual actions or the actions of their associates on the grand jury.]

[6. A presentment differs from an indictment in that it wants technical form, and is usually found by the grand jurors upon their own knowledge, or upon evidence before them, without having any bill from the public prosecutor. It is an informal accusation, to be regarded in the light of instructions upon which an indictment may be framed. This form of accusation has, however, fallen into disuse since the practice has prevailed for the prosecuting officer to attend the grand jury and advise them in their investigations.]

[7. The district attorney has a right to be present before the federal grand jury at the taking of testimony, for the purpose of giving information or advice, and may interrogate the witnesses; but he has no right to be present during the deliberations of the grand jury.]

At a term of the circuit court of the United States for the district of California, held at San Francisco on the 26th of August, 1872, a grand jury was empaneled, and to its foreman the following oath was administered: "You, as foreman of this inquest for the body of the district of California, do swear that you will diligently inquire, and true presentment make, of such articles, matters and things as shall be given you in charge, or otherwise come to your knowledge, touching the present service. The government's counsel, your fellows', and your own you shall keep secret; you shall present no one for envy, hatred or malice; neither shall you leave any one unpresented for fear, favor, affection, hope of reward or gain, but shall present all things truly as they come to your knowledge, according to the best of your understanding. So help you God!" Then to the rest of the grand jurors the following oath was administered: "The same oath which your foreman has taken on his part, you, and every one of you, shall well and truly observe on your part. So help you God!"

Before FIELD, Circuit Justice, and SAWYER, Circuit Judge.

FIELD, Circuit Justice, then charged the grand jury as follows:

You are summoned as grand jurors of the circuit court of the United States for the district of California, and the duties with which you are charged are of the highest importance to the due administration of justice. By the constitution of the United States, no person can be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. No steps, therefore, can be taken, with the exceptions mentioned, for the prosecution of any crime of an infamous character—and under that designation the whole series of felonies is classed—beyond the arrest, examination and commitment of the party accused, until the grand jury have deliberated and acted upon the accusation. Your functions are, therefore, not only as already stated, important; they are indispensable to the administration of criminal justice.

The institution of the grand jury is of very ancient origin in the history of England: it goes back many centuries. For a long period its powers were not clearly defined; and it would seem, from the accounts of commentators on the laws of that country, that it was at first a body, which not only accused, but which also tried public offenders. However this may have been in its origin, it was, at the time of the settlement of this country, an in-

30 Fed.Cas.—63

forming and accusing tribunal only, without whose previous action no person charged with a felony could, except in certain special cases, be put upon his trial.[2] And in the struggles which at times arose in England between the powers of the king and the rights of the subject, it often stood as a barrier against persecution in his name; until, at length, it came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the crown.

In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen, which required the existence of the grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it come from government or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes, unless this body, consisting of not less than sixteen, nor more than twenty-three, good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial.

From these observations, it will be seen, gentlemen, that there is a double duty cast upon you as grand jurors of this district; one a duty to the government, or more properly speaking, to society, to see that parties against whom there is just ground to charge the commission of crime, shall be held to answer the charge; and on the other hand, a duty to the citizen to see that he is not subjected to prosecution upon accusations having no better foundation than public clamor or private malice.

The government has appointed the district attorney to represent its interest in the prosecution of parties charged with the commission of public offenses against the laws of the United States. He will, therefore, appear before you, and present the accusations which the government may desire to have considered by you. He will point out to you the laws which the government deems to have been violated; and will subpœna for your examination such witnesses as he may consider important, and also such other witnesses as you may direct.

In your investigations you will receive only legal evidence, to the exclusion of mere reports, suspicions and hearsay evidence. Subject to this qualification, you will receive all the evidence presented which may throw light upon the matter under consideration, whether it tend to establish the innocence or the guilt of the accused. And more: if, in the course of your inquiries, you have reason to believe that there is other evidence, not presented to you, within your reach, which would qualify or explain away the charge under investigation, it will be your duty to order such evidence to be produced. Formerly, it was held that an in-

[2] There were a few exceptional cases in England in which a party could be arraigned and tried for a felony without the previous action of a grand jury. Thus, in a case of death, a party could be arraigned upon the inquisition of a coroner's inquest. And where the verdict of a jury in a civil case necessarily involved a finding that the defendant was guilty of a public offense, he might sometimes be called upon to answer. Thus, in an action for taking away goods, if the jury found that they were taken feloniously, the verdict might be used as an indictment. So in an action of slander, in which the plaintiff was charged with a criminal offense, and the defendant justified, if the jury found that the justification was true, the plaintiff might be immediately put upon his trial for the crime alleged against him without the action of the grand jury. See 1 Chit. Cr. Law, 165.

dictment might be found if evidence were produced sufficient to render the truth of the charge probable. But a different and a more just and merciful rule now prevails. To justify the finding of an indictment, you must be convinced, so far as the evidence before you goes, that the accused is guilty—in other words, you ought not to find an indictment unless, in your judgment, the evidence before you, unexplained and uncontradicted, would warrant a conviction by a petit jury.

How far you should proceed to inquire into other matters than such as are brought to your consideration by the government, through its prosecuting officer, the district attorney, has been a matter of much conflict of opinion among different judges.

Before giving our views upon this subject, it is proper to state that there is a wide difference between the powers and duties of grand juries of the state courts of California and of grand juries of the national courts.

By a statute of the state, grand juries of the state courts possess very great inquisitorial powers. They are required to inquire into the official misconduct of public officers of every description in their county, and are entitled to the examination of all its public records. They are bound by their oath to inquire into and presentment make of all public offenses against the laws of the state committed or triable in their county, of which they have, or "can obtain" legal evidence. In order to ascertain whether or not there has been any official misconduct in any public officer, they have, under the statute, authority to inspect all his books and records, and to subject him to a searching examination.

No such general authority to inspect the books of the officers of the United States, and to subject the officers themselves to examination in respect to the entries in those books, is possessed by the grand juries of the national courts. The exercise of such authority might prove of serious detriment to the public service, for it might interfere with the established system by which the accountability of the local officers of the United States to the executive departments at Washington is secured. You will readily perceive that an inspection by the grand jury, for instance, of the books of the collector of customs at this port, and requiring that officer to explain his entries and his conduct, often directed by private and confidential communications from those departments, might seriously embarrass the government in its action. So, too, embarrassment might follow from a similar inspection of the records and examination of other officers of the United States.

The examination of the books and accounts of the officers of the general government is provided for by law or by regulations of the executive departments. When on such examination the accounts are found to be unsatisfactory, and defects and delinquencies are discovered which render the officers liable to prosecution, civil or criminal, the proper instructions are given to the district attorney of the United States, and the matter is brought by him to the attention of the court or of the grand jury.

We return now to the inquiry as to what matters you can direct your investigation beyond those which are brought to your notice by the district attorney. Your oath requires you to diligently inquire, and true presentment make, "of such articles, matters and things as shall be given you in charge, or otherwise come to your knowledge touching the present service."

The first designation of subjects of inquiry are those which shall be given you in charge; this means those matters which shall be called to your attention by the court, or submitted to your consideration by the district attorney. The second designation of subjects of inquiry are those which shall "otherwise come to your knowledge touching the present service;" this means those matters within the sphere of and

relating to your duties which shall come to your knowledge, other than those to which your attention has been called by the court or submitted to your consideration by the district attorney.

But how come to your knowledge?

Not by rumors and reports, but by knowledge acquired from the evidence before you, or from your own observations. Whilst you are inquiring as to one offense, another and a different offense may be proved, or witnesses before you may, in testifying, commit the crime of perjury.

Some of you, also, may have personal knowledge of the commission of a public offense against the laws of the United States, or of facts which tend to show that such an offense has been committed, or possibly attempts may be made to influence corruptly or improperly your action as grand jurors. If you are personally possessed of such knowledge, you should disclose it to your associates; and if any attempts to influence your action corruptly or improperly are made, you should inform them of it also, and they will act upon the information thus communicated as if presented to them in the first instance by the district attorney.

But unless knowledge is acquired in one of these ways, it cannot be considered as the basis for any action on your part.

We, therefore, instruct you that your investigations are to be limited: First, to such matters as may be called to your attention by the court; or, second, may be submitted to your consideration by the district attorney; or, third, may come to your knowledge in the course of your investigations into the matters brought before you, or from your own observations; or, fourth, may come to your knowledge from the disclosures of your associates.

You will not allow private prosecutors to intrude themselves into your presence, and present accusations. Generally such parties are actuated by private enmity, and seek merely the gratification of their personal malice.

If they possess any information justifying the accusation of the person against whom they complain, they should impart it to the district attorney, who will seldom fail to act in a proper case. But if the district attorney should refuse to act, they can make their complaint to a committing magistrate, before whom the matter can be investigated, and if sufficient evidence be produced of the commission of a public offense by the accused, he can be held to bail to answer to the action of the grand jury.

When the court does not deem the matter of sufficient importance to call your attention to it, and the district attorney does not think it expedient to submit the matter to your consideration, and the private prosecutor neglects to proceed before the committing magistrate, we think it may be safely inferred that public justice will not suffer, if the matter is not considered by you.

A preliminary examination of the accused before a magistrate, where he can meet his prosecutor face to face, and cross-examine him, and the witnesses produced by him, and have the benefit of counsel, is the usual mode of initiating proceedings in criminal cases, and is the one which presents to the citizen the greatest security against false accusations from any quarter. And this mode ought not to be departed from, except in those cases where the attention of the jury is directed to the consideration of particular offenses by the court, or by the district attorney, or the matter is brought to their knowledge in the course of their investigations, or from their own observations, or from disclosures made by some of their number.

We have been led, gentlemen, to give these instructions upon the nature of your duties and the limits to the sphere of your investigations, because an impression widely prevails that the institution of the grand jury has outlived its usefulness, an impression which has been created from a disregard of those limits, and the

facility with which it has, unfortunately, often been used as an instrument for the gratification of private malice.

There has hardly been a session of the grand jury of this court for years, at which instances have not occurred of personal solicitation to some of its members to obtain or prevent the presentment or indictment of parties. And communications to that end have frequently been addressed to the grand jury filled with malignant and scandalous imputations upon the conduct and acts of those against whom the writers entertained hostility, and against the conduct and acts of former and present officers of this court, and of previous grand juries of this district.

All such communications are calculated to prevent and obstruct the due administration of justice, and to bring the proceeuings of the grand jury into contempt. "Let any reflecting man," says a distinguished judge, "be he layman or lawyer, consider the consequences which would follow, if every individual could at his pleasure throw his malice or his prejudice into the grand jury room, and he will of necessity conclude that the rule of law which forbids all communications with grand juries. engaged in criminal investigations, except through the public instructions of courts, and the testimony of sworn witnesses, is a rule of safety to the community. What value could be attached to the doings of a tribunal so to be approached and influenced? How long would a body, so exposed to be misled and abused, be recognized by freemen as among the chosen ministers of liberty and security? The recognition of such a mode of reaching grand juries would introduce a flood of evils, disastrous to the purity of the administration of criminal justice, and subversive of all public confidence in the action of these bodies." Judge King, of Philadelphia, in Com. v. Crans [2 Clark, 172].

At its last session congress passed a stringent act to prevent the continuance of this pernicious practice, as well as to prevent any attempt to influence the administration of justice corruptly or by the intimidation of jurors. It is entitled "An act to prevent and punish the obstruction of the administration of justice in the courts of the United States." It enacts "that if any person or persons shall corruptly, or by threats or force, or by threatening letters, or any threatening communications, endeavor to influence, intimidate, or impede any grand or petit jury or juror of any court of the United States in the discharge of his or their duty, or shall corruptly or by threats or force, or by threatening letters, or any threatening communications, influence, obstruct or impede, or endeavor to influence, obstruct or impede the due administration of justice therein, such person or persons so offending shall be liable to prosecution therefor by indictment, and shall, on conviction thereof, be punished by fine not exceeding one thousand dollars, or by imprisonment not exceeding one year, or by both, according to the aggravation of the offense." And it also enacts, that "if any person or persons shall attempt to influence the action or decision of any grand or petit juror upon any issue or matter pending before such juror, or before the jury of which he is a member, or pertaining to his or their duties, by writing or sending to him any letter or letters, or any communication in print or in writing in relation to such issue or matter, without the order previously obtained of the court before which the said juror is summoned, such person or persons so offending shall be deemed guilty of a misdemeanor, and shall be liable to prosecution therefor by indictment or information, and shall, on conviction thereof, be punished by fine not exceeding one thousand dollars, or by imprisonment not exceeding six months, or by both such fine and imprisonment, according to the aggravation of the offense."

You thus perceive that congress intends that in the investigation of public offenses you shall be secure from intimidation or personal influence of every kind.

The distinguished judge whom I have already quoted observes that, "into every quarter of the globe in which the Anglo Saxon race have formed settlements, they have carried with them this time-honored institution, ever regarding it with the deepest veneration. and connecting its perpetuity with that of civil liberty." And congress has designed by the act in question, that this high character of your body shall not be lessened. If, therefore, in violation of this law, to influence your action or decision, any letter or communication in print or writing relating to any issue or matter pending before you. or pertaining to your duties is sent to you without the previous order of the court, a case will arise coming to your knowledge, within the principle already stated, and it will be your duty, upon that knowledge to indict or present the offending party. It will, also, be your duty to preserve and deliver to the district attorney the letter or other communication sent to you, to be used as evidence in the prosecution of the party.[3]

The oath which you have taken indicates the impartial spirit with which your duties should be discharged. You are to present no one from envy, hatred or malice; nor shall you leave any one unpresented for fear, favor, affection, hope of reward or gain; but shall present all things truly as they come to your knowledge according to the best of your understanding.

You are also to keep your own deliberations secret; you are not at liberty even to state that you have had a matter under consideration. Great injustice and injury might be done to the good name and standing of a citizen if it were known that there had ever been before you for deliberation the question of his guilt or innocence of a public offense. You will allow no one to question you as to your own action or the action of your associates on the grand jury.

To authorize you to find an indictment or presentment there must be a concurrence of at least twelve of your number; a mere majority will not suffice.

The constitution, as you have observed, speaks of a presentment or indictment by a grand jury. The latter—the indictment—is a formal accusation made by the grand jury charging a party with the commission of a public offense. Formerly it was the practice in all courts having jurisdiction to inquire by the intervention of a grand jury of public offenses, amounting to the grade of felonies—and such is the practice now in many courts—for the public prosecutor to hand to the grand jury an instrument of this character—that is, a bill of an indictment in form, with a list of the witnesses to establish the offense charged. If in such case the jury found that the evidence produced justified the

[3] In a case which arose in Philadelphia in 1845, Judge King considered at length, in an elaborate and very able opinion, the duties of grand juries in criminal cases; and his views agree substantially with those expressed in the charge. "Our system of criminal administration," said the judge, "is not subject to the reproach that there exists in it an irresponsible body with unlimited jurisdiction. On the contrary, the duties of a grand jury in direct criminal accusations, are confined to the investigation of matters given them in charge by the court; of those preferred before them by the attorney-general; and of those which are sufficiently within their own knowledge and observation to authorize an official presentment; and they cannot, on the application of any one, originate proceedings against citizens, which is a duty imposed by law on other public agents. This limitation of authority we regard as alike fortunate for the citizen and the grand jury. It protects the citizen from the persecution and annoyance which private malice, or personal animosity, introduced into the grand jury room, might subject him to. And it concerns the dignity of the grand jury and the veneration with which they ought always to be regarded by the people, by making them umpire between the accuser and accused, instead of assuming the office of the former." Communication of Grand Jury, 5 Pa. Law J. 63, 64.

finding of an indictment they indorsed on the instrument "A True Bill;" otherwise, "Not Found," or, "Not a True Bill," or the word "Ignoramus"—we know nothing of it—from the use of which latter word the bill was sometimes said to be ignored.

A presentment differs from an indictment in that it wants technical form, and is usually found by the grand jury upon their own knowledge, or upon the evidence before them, without having any bill from the public prosecutor. It is an informal accusation, which is generally regarded in the light of instructions upon which an indictment can be framed.

This form of accusation has fallen in disuse since the practice has prevailed—and the practice now obtains generally—for the prosecuting officer to attend the grand jury and advise them in their investigations.

The government now seldom delivers bills of indictment to the grand jury in advance of their action, but generally awaits their judgment upon the matters laid before them. The district attorney has the right to be present at the taking of testimony before you for the purpose of giving information or advice touching any matter cognizable by you, and may interrogate witnesses before you, but he has no right to be present pending your deliberations on the evidence. When your vote is taken upon the question whether an indictment shall be found or a presentment made, no person besides yourselves should be present.

These, gentlemen, are all the general instructions which we have thought important to give you at this time. There are some few observations, however, which we would add respecting the execution of the revenue laws; and these we will take from a charge of the present chief justice of the United States, delivered to a grand jury in West Virginia. "The war," says that great judge, "in which the nation has been recently engaged for the preservation of the national union and government, endangered by rebellion, made the contracting of a large debt inevitable. This debt is the price of our national existence, and binds irrevocably the good faith of the people. Its inviolable obligation has been recognized by a solemn act of the nation in adopting the fourteenth amendment to the constitution of the United States, which declares that 'the validity of the public debt of the United States, authorized by law, including debts incurred for the payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned.' "

"There are differences of opinion as to the mode of payment required by the contracts of the American people, made through their government; but nobody questions openly, if anybody questions at all, that the debt contracted must be paid, and paid in perfect good faith. The law of the amendment that the validity of the national debt shall not be questioned, was already written on the hearts of the people before they made it part of the constitution. To provide for the reduction and final payment of this debt and the annual expenses of the government, taxes are necessarily imposed. In other words, the equal proportion to be contributed by each citizen is ascertained by law. He who withholds his just proportion, deprives the rest of the people of exactly the same amount withheld. His fraud operates as theft. The sum total necessary to meet the obligations of the nation must be raised. Fraud upon the revenue does not reduce that sum; it merely shifts the burdens evaded by the fraudulent, upon others who pay their full proportion besides. All honest men, therefore, have a common cause against the dishonest."

You, gentlemen, represent the honest men, and it is your duty to see that no defrauder of the revenue who can be brought to justice, escapes merited punishment. The higher in office, and the higher in social position the delinquent may be, the more unremitting and searching should be your diligence in inquiry and presentment.

To these observations of the chief justice, it may not be out of place to add here, that great as is the debt forced upon the nation by the recent Rebellion, the results to the country which have followed from the war, to which that Rebellion led, should make us feel that the burden of the debt is light.

That war has done away forever with the miserable notion, which extensively prevailed at the time of the outbreak of the Rebellion, that the general government, because it was formed by the people of the several states, sovereign in some of their powers, should not exert any coercion to enforce its laws. No one is now willing to run a tilt against common sense by adducing any argument in support of this absurd position; and the war has demonstrated that the general government possesses all the power necessary to enforce obedience to its laws throughout the limits of the republic.

That war has also led to the great constitutional amendments; the amendment which declares that "neither slavery nor involuntary servitude, except as a punishment for crime, of which the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction;" and the amendment which declares that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

These amendments constitute the great, the crowning glory of the country, for they make freedom, when not forfeited by crime, the legal condition of every human being within the jurisdiction of the United States, and equality before the law his constitutional right.

We had intended, gentlemen, to say something respecting the treatment which Chinese and other Asiatics have sometimes received in this district. But the district attorney informs us that there are no cases pending which would require a consideration of this matter by you. We will therefore only observe that although there may be reasonable differences of opinion with respect to the wisdom and policy of encouraging the immigration to this country of persons, between whom and our people there is such marked dissimilarity in constitution, habits and manners; yet so long as our country seeks to enlarge her commerce by treaties with Asiatic countries, and to secure protection to her own citizens in those countries by pledging protection to their citizens in this country, it is the duty of the government to exert its power, its entire power if necessary, to enforce its obligations in this respect.

And more than this—independently of all such considerations of duty or interest, it is base and cowardly to maltreat these people whilst they are within the jurisdiction of our government. If public policy requires that they should be excluded from our shores, let the general government so provide and declare, but until it does so provide and declare, they have a perfect right to immigrate to this country; and whilst here they are entitled, equally with all others, to the full protection of our laws. It is unchristian and inhuman to maltreat them, as has been sometimes done by disorderly persons, we are sorry to say, in this district.

We are not aware, gentlemen, that any matter will be presented to you requiring any other special directions than those already given. Should any such arise, the court will again call you before it and give such instructions as the matter may require. You are at liberty at any time to ask the advice of the court upon any questions of law relating to matters under investigation before you, although you will probably find the advice of the district attorney upon those matters sufficient to guide your action.