**In re NEW HAVEN GRAND JURY.**

**In re Anthony R. MARTIN–TRIGONA, Debtor.**

**Misc. Civ. Nos. H 85–11, H 83–62.**

United States District Court, D. Connecticut.

Feb. 21, 1985.

Anthony R. Martin-Trigona, Danbury, Conn., *pro se.*

Albert S. Dabrowski, Asst. U.S. Atty., Hartford, Conn., for the United States.

## RULING ON CORRESPONDENCE ADDRESSED TO THE CLERK REGARDING THE TRANSMISSION OF A CONFIDENTIAL COMMUNICATION TO A GRAND JURY

JOSÉ A. CABRANES, District Judge:

The question presented is whether an individual has a right to communicate with a federal grand jury, absent a request from the grand jury, without the approval of the United States Attorney or a judge. It is a question faced with increasing frequency by courts confronted by a variety of persons who profess to lack confidence in the judgment of prosecutors and judges and who believe themselves to be the most appropriate instruments for the vindication of the interests of justice. I conclude that, as a general proposition, such private prosecutorial initiatives are not permitted by law; in any event, they are wholly unwarranted in the circumstances presented here.

### Introduction

On May 24, 1984, the Office of the Clerk at the New Haven Seat of Court conveyed to me a letter dated May 16, 1984 and a

sealed enclosure written by a notorious *pro se* litigant[1] and addressed to the Clerk. Captioned "Re: UNITED STATES GRAND JURY FOR THE DISTRICT OF CONNECTICUT SITTING AT NEW HAVEN," the text of the letter requested the Clerk to convey the sealed enclosure to the New Haven grand jury outside the presence of the United States Attorney, and admonished the Clerk not to "tamper" with the sealed enclosure or to turn it over to the United States Attorney.[2] The wording of the letter to the Clerk, coupled with this correspondent's history of hostility to judges here and elsewhere,[3] makes it appear that he also wishes to avoid judicial scrutiny of his communication with the grand jury.

By order entered May 29, 1984, I invited the United States Attorney to comment on this correspondence. In response, the United States Attorney took the position that the court should not convey the documents in question to the grand jury until requested to do so by its foreperson. *See* Response of the United States Attorney (filed June 6, 1984) ("Response").

■ A consideration of applicable law and the full record of these proceedings yields the inescapable conclusion that neither a grand jury target nor a private complainant[4] has a right to communicate

---

**1.** There is a mass of litigation, largely pernicious, in this Circuit and elsewhere associated with the name of Anthony R. Martin-Trigona, the author of the correspondence at issue here. For some background on Martin-Trigona's abuse of the judicial process, often characterized by harassment of individuals with whom he has had only the slightest contact, *see In re Martin-Trigona*, 737 F.2d 1254 (2d Cir.1984); *see also In re Martin-Trigona*, 55 Ill.2d 301, 302 N.E.2d 68 (1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974); *In re Martin-Trigona*, 573 F.Supp. 1245 (D.Conn.1983); *In re Martin-Trigona*, 592 F.Supp. 1566 (D.Conn. 1984).

Despite a grant of immunity pursuant to 18 U.S.C. § 6003 and this court's orders that he testify concerning his financial affairs under Rule 2004 of the Bankruptcy Rules, Martin-Trigona has refused to answer questions properly directed to him by the trustee of his bankruptcy estate. Accordingly, he is now incarcerated for civil contempt of court pursuant to an order of this court that has been affirmed by the Court of Appeals. *In re Martin-Trigona*, 732 F.2d 170 (2d Cir.1984); *In re Martin-Trigona*, 742 F.2d 1434 (2d Cir.1984) (unpublished order). *See also Martin-Trigona v. Shiff*, 702 F.2d 380 (2d Cir. 1983); *In re Martin-Trigona*, 590 F.Supp. 87, 88, nn. 1, 2 (D.Conn.1984). With respect to all matters exposing him to the risk of incarceration, and to all applications for his release, Martin-Trigona has been represented by appointed counsel.

**2.** The text of the May 16, 1984 letter to the Clerk is as follows:

Dear People:

I am enclosing a confidential communication for the Grand Jury sitting in New Haven. I ask that it be presented to the Grand Jury *outside the presence of anyone from the U.S. Attorney's office.*

This letter should be locked in your safe until it can be presented to the grand jury.

Under the law, it is a confidential communication to the grand jury and should be kept confidential.

If you have any questions, kindly contact me. Under *no* circumstances should the confidential envelope be tampered with or turned over to the U.S. Attorney.

As always, your courtesy and cooperation is appreciated.

Respectfully submitted,
ANTHONY R. MARTIN-TRIGONA
P.O. Box 2002
New York, NY 10185

The letter bears Martin-Trigona's familiar signature monogram.

**3.** The record of proceedings before this court reveals that this correspondent's imagined "enemies" include various court-appointed bankruptcy trustees and their counsel, the entire Panel of Interim Bankruptcy Trustees of this District, the two bankruptcy judges of this District, bankruptcy judges in at least two other districts, most of the district judges of the District of Connecticut, all of the active circuit judges of the Second Circuit, the United States Attorney for this District, and the Attorney General of the United States. *See generally In re Martin-Trigona, supra*, 573 F.Supp. at 1256–1258. *See also, e.g.,* note 1, *supra.*

**4.** The capacity in which the correspondent wishes to communicate with the New Haven grand jury is not apparent from his letter to the Clerk, but two general possibilities come to mind. They are: (a) as a *target* or *potential target* of a grand jury investigation or (b) as a *complainant* or *informer.* The United States Attorney reported that the correspondent is a potential target of the New Haven grand jury. *See* Response of the United States Attorney (filed June 6, 1984) ("Response") at 4. At least with respect to the Hartford grand jury, it appears that the correspondent sought to communicate

directly, in writing or otherwise, with a federal grand jury without the approval of a prosecutor or judge. There is no constitutional, statutory, or common law right to communicate directly with a federal grand jury without the participation of a prosecutor or judge, and attempts to transmit written communications directly to a grand jury may constitute a crime.

█ In any event, because this correspondent has a well-documented history of persecuting innocent persons through abuse of legal processes, he may not appear before a federal grand jury in this District until and unless he is invited or ordered by a grand jury to do so and he may not have communications conveyed to a grand jury without the approval of the United States Attorney or the court.[5]

## I.

█ It is settled that a target of a grand jury investigation—that is, a person whose indictment the grand jury is considering—does not have a right to appear as a witness before the grand jury. *United States v. Ciambrone*, 601 F.2d 616, 622–623 (2d Cir.1979); *United States v. Thompson*, 144

F.2d 604, 605 (2d Cir.) (L. Hand, J.) ("the practice [of a target of an investigation appearing before a grand jury] was utterly unknown at common law ... [A]lthough grand juries have in recent times occasionally invited persons, whose conduct they are examining, to appear, they are never obliged to do so[.]" ), *cert. denied*, 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944); *see also United States v. Salsedo*, 607 F.2d 318, 319 (9th Cir.1979); *United States v. Smith*, 552 F.2d 257, 261 (8th Cir.1977); *United States v. Donahey*, 529 F.2d 831, 832 (5th Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Duke v. United States*, 90 F.2d 840, 841 (4th Cir.), *cert. denied*, 302 U.S. 685, 58 S.Ct. 33, 82 L.Ed. 528 (1937).

It apparently is the policy or practice of some federal prosecutors to afford some targets or potential targets of grand jury investigations an opportunity to testify before the grand jury prior to the grand jury's determination whether to indict. *See, e.g.*, Response at 4–5 (description of access to New Haven grand jury that might be afforded to a potential target of that grand

---

with it as a complainant. *See* Letter from Albert S. Dabrowski, Assistant United States Attorney to Martin-Trigona (dated May 9, 1984), attached to Response. *See generally* Certified Official Transcript of Hearing of December 13, 1983 (filed Dec. 16, 1983) at 77.

**5.** On past occasions, the correspondent has been granted opportunities to communicate with federal grand juries in this District. He was allowed by another judge to address the grand jury sitting at Hartford on February 28, 1983. *See* Response at 3. Additionally, an envelope that he had sent to the Deputy-in-Charge of the Office of the Clerk in Hartford on November 17, 1983 and that he had requested be given to the grand jury, was delivered on March 20, 1984 by a representative of the Clerk's Office to the Hartford grand jury, with the permission of the Assistant United States Attorney in charge of supervising the grand jury, as well as with my permission. *Id.* After considering this second communication from this correspondent, the Hartford grand jury foreperson resealed the envelope and endorsed it as follows:

The contents of this envelope were delivered to the Grand Jury on March 20, 1984. The Grand Jury has examined the contents and it is the decision of the Grand Jury to conduct no further investigation in connec-

tion with this matter. We do not desire to summon or hear from [the addressor].

*Id.* at 4. The grand jury foreperson then personally redelivered the envelope to a representative of the Office of the Clerk, with instructions that it "be kept under seal until further Order of the Court." *Id.* at 3.

It appears that the letter of May 16, 1984 that is now before the court "follow[ed] notice to the addressor, by letter dated May 9, 1984, that the Hartford grand jury, which also received and examined a sealed envelope submitted to them by the addressor, did 'not desire to summon or hear from [the addressor].'" *Id.* at 2–3.

Each of these earlier opportunities to communicate directly with a federal grand jury was the result of decisions by a judge or prosecutor, or both, upon consideration of requests by this correspondent. Those earlier decisions were, therefore, entirely consistent with the principle that a person may initiate communications with a grand jury only with the approval of a prosecutor or judge. It is clear, in any case, that this particular correspondent already has been afforded greater grand jury access than that to which he is entitled as a matter of law. *See* note 11, *infra*.

jury by the Office of the United States Attorney for the District of Connecticut). Whatever the merits of such policies or practices, it is clear that they are entirely within the discretion of the prosecutor and are in no sense required by law.

If, as the cases cited above make clear, a target of an investigation has no right to appear before the grand jury—to present evidence, to submit his views, or to bolster his credibility—it is reasonable to conclude that a target has no right to convey that evidence or those views to the grand jury in writing or to attempt to bolster his credibility with the grand jury through a written communication in lieu of a personal appearance.

■ Indeed, the initiation by a private party of written communications with a grand jury, with the exception of a request for an opportunity to appear, may constitute a crime. *See* 18 U.S.C. § 1504.[6] The statute on jury tampering by written communications is instructive because "[t]he purpose of 18 U.S.C.[] § 1504 was to prevent anyone from attempting to bring pressure upon or [to] intimidate a grand juror by a written communication with that intent." *United States v. Smyth*, 104 F.Supp. 283, 299 (N.D.Cal.1952).[7] The stat-

ute prohibits written communications addressed to the grand jury as a body and intended to be seen by all of the jurors, as well as those addressed to an individual juror. *See Duke v. United States, supra,* 90 F.2d at 841 (target of a grand jury investigation convicted under predecessor statute to 18 U.S.C. § 1504 for transmitting a letter to grand jury foreman with purpose of "get[ting] before the grand jury [his] contentions and unsworn statements").

It is evident that a *potential* target of a grand jury investigation would have no greater right to communicate in person or in writing with the grand jury than would an *actual* target, since the interests of a potential target would be that much more remote. Since a target would have no right to communicate with the grand jury, it follows that a potential target also would have no right to communicate with the grand jury.

## II.

■ A complainant or informer has no greater right to appear before a grand jury or to communicate directly with it in writing than does a target or potential target of a grand jury.[8] *See People v. Parker,*

---

6. Entitled "Influencing juror by writing," the statute provides that

 [w]hoever attempts to influence the action or decision of any grand or petit juror of any court of the United States upon any issue or matter pending before such juror, or before the jury of which he is a member, or pertaining to his duties, by writing or sending to him any written communication, in relation to such issue or matter, shall be fined not more than $1,000 or imprisoned not more than six months, or both.

 Nothing in this section shall be construed to prohibit the communication of a request to appear before the grand jury.

 For a discussion of the applicability of Section 1504 to this case, *see* notes 17–21, *infra,* and accompanying text.

7. Section 1504 does not prohibit a grand jury from directly receiving confidential communications where the grand jury has "solicited" or "indicated a willingness to receive" such communications, *United States v. Smyth, supra,* 104 F.Supp. at 299. The facts of the instant case do not fit within that limited exception because the grand jury has neither "solicited" nor "indicated

a willingness to receive" any communication from this correspondent. *See, e.g.,* note 5, *supra.*

8. The editors of one leading criminal procedure casebook have suggested, in reliance on *Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962) and *Thomas v. Crevasse,* 415 F.2d 550 (5th Cir.1969), that a right directly to transmit written communications to a grand jury "arguably" may be found in the First Amendment to the United States Constitution. Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure: Cases, Comments, Questions,* 720 n. c (5th ed. 1980). Nothing in these cases suggests the existence of a First Amendment right of a complainant to communicate in writing, or otherwise, with a grand jury. The authorities relied upon by these editors invoke the First Amendment only with reference to protections afforded to public dissemination of material critical of the grand jury; they lend no support to a general right of direct access to the grand jury in the federal courts. *See Wood v. Georgia, supra,* 370 U.S. at 379–383, 391–392, 82 S.Ct. at 1367–1369, 1373–1372; *Thomas v. Crevasse, su-*

397 Ill. 305, 74 N.E.2d 523, 525–526 (1947) (*per curiam*) (rejecting First Amendment challenge to a state court criminal contempt conviction for mailing letter to grand jury foreman alleging a conspiracy between a newspaper, prosecutors and politicians) ("*Parker II*"),[9] *aff'd per curiam by equally divided court*, 334 U.S. 816, 68 S.Ct. 1082, 92 L.Ed. 1747 *reh'g denied*, 334 U.S. 840, 68 S.Ct. 1184, 92 L.Ed. 1764 (1948);[10] *United States v. Kilpatrick*, 16 F. 765, 769, 771 (W.D.N.C.1883) (there is "no right to communicate private informa-

tion to a grand jury for the purpose of obtaining a presentment" and it is a crime for "any individual, acting as a volunteer, to approach or communicate with the grand jury in reference to any matter which either is or may come before [it]."); *Charge to Grand Jury*, 30 F.Cas. 992, 994–995 (C.C.D.Cal.1872) (No. 18,255) (Field, Circuit Justice).[11]

As noted, direct communication with a grand jury may be a crime under 18 U.S.C. § 1504. Describing the frequency of private communications to the grand jury

---

*pra*, 415 F.2d at 551–552. The petitioner in *Wood* had been convicted by the state trial court not only for publicly criticizing the grand jury, but also for directly communicating with the grand jury. However, this latter conviction was not considered by the United States Supreme Court, because it was reversed on state law grounds by the Georgia appellate court. 370 U.S. at 383, 82 S.Ct. at 1369; *Wood v. Georgia*, 103 Ga.App. 305, 119 S.E.2d 261, 272 (1961). As this casebook correctly observes, the Illinois Supreme Court decision in *People v. Parker*, 374 Ill. 524, 30 N.E.2d 11 (1940) ("*Parker I*") and 18 U.S.C. § 1504 are two authorities that effectively reject the proposition they find "arguable." *See also* 313 U.S. 560, 61 S.Ct. 836, 85 L.Ed. 1520 (1941) (denial of a petition to the United States Supreme Court for a writ of *certiorari* in *Parker I*) and *People v. Parker*, 397 Ill. 305, 74 N.E.2d 523, 525–526 (1947) (*per curiam*) ("*Parker II*"), *aff'd per curiam by equally divided court*, 334 U.S. 816, 68 S.Ct. 1082, 92 L.Ed. 1747, *reh'g denied*, 334 U.S. 840, 68 S.Ct. 1184, 92 L.Ed. 1764 (1948) (authorities not mentioned by casebook). *See* notes 9 and 10, *infra*, and accompanying text.

Without precluding the possibility of some exceptional circumstances not now anticipated, the court simply does not find in the First Amendment or elsewhere a requirement that direct access to a grand jury must be provided to a member of the public without the review and supervision of a prosecutor or a judge.

9. In *Parker II*, a case strikingly similar to this one, it was noted that Parker previously (in *Parker I*) had been convicted of contempt of court for an even more "vicious and inflammatory" letter to the grand jury that alleged that various wrongs had been committed by his enemies against his family. *See Parker I; Parker II*, 74 N.E.2d at 525. *See also* note 10, *infra*, and accompanying text.

10. While the Supreme Court's affirmance of a decision by an equally divided court has no binding precedential value, *Hertz v. Woodman*, 218 U.S. 205, 213–214, 30 S.Ct. 621, 622–23, 54 L.Ed. 1001 (1910); *Laird v. Tatum*, 409 U.S. 824,

837–838, 93 S.Ct. 7, 14–15, 34 L.Ed.2d 50 (1972) (memorandum of Rehnquist, J.); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir.1978), this court finds persuasive the reasoning of the Illinois Supreme Court in *Parker II* (concerning the absence of a federal constitutional right of a complainant to communicate directly with a grand jury).

11. In *Charge to Grand Jury, supra*, Justice Field instructed grand jurors that they were not to

... allow private prosecutors to intrude themselves into [their] presence, and present accusations. Generally such parties are actuated by private enmity, and seek merely the gratification of their personal malice.

30 F.Cas. 994.

His observations are especially apt with respect to the case at hand. The person here seeking access to the grand jury has an "established practice" of abusing legal processes to harass "anyone who so much as crosses his path." *In re Martin-Trigona, supra*, 737 F.2d at 1263. His "persistence, viciousness, and general disregard for decency and logic," are amply documented in published decisions of this and other courts. *Id.* at 1259, *quoting In re Martin-Trigona, supra*, 573 F.Supp. 1245 (and cases cited therein). Even assuming *arguendo* that there exists some limited right of direct access by private parties to federal grand juries, the past misconduct of this correspondent and his earlier limited and supervised access to federal grand juries indicate that he has had more than enough access to federal grand juries. *See* note 5, *supra*.

Moreover, any application by this correspondent seeking access to a federal grand jury now would be governed by the terms of an Order of Permanent Injunction, Sections IV., V., *In re Martin-Trigona*, 592 F.Supp. 1566, 1572–1573 (D.Conn.1984), entered pursuant to the directions of the Court of Appeals, *In re Martin-Trigona, supra*, 737 F.2d at 1264, that generally limits his capacity to use the courts and other fora for harassment and sport. *See* note 23, *infra*, and accompanying text.

"filled with malignant and scandalous imputations" against judges and others, and the damage to the grand jury system that such communications cause, Justice Field described the then-recently-enacted predecessor to 18 U.S.C. § 1504 as intended to secure the grand jury "from intimidation or personal influence of every kind." *Charge to Grand Jury, supra* 30 F.Cas. at 995. He instructed the grand jury to turn over such communications to the prosecutor for use against the originators. *Id.*

### III.

It has been observed that the grand jury functions both as "a sword and a shield of justice." *United States v. Cox,* 342 F.2d 167, 186 (5th Cir.) (Wisdom, J., concurring), *cert. denied sub. nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). *See generally United States v. Calandra,* 414 U.S. 338, 342–346, 94 S.Ct. 613, 617–19, 38 L.Ed.2d 561 (1974). As a sword, the function of the grand jury is, in the words of Professor Lester B. Orfield, "to bring to trial persons accused of crime upon just grounds." Orfield, *The Federal Grand Jury,* 22 F.R.D. 343, 394 (1958). As a shield, the grand jury's function is "to protect persons against unfounded or malicious prosecutions by insuring that no criminal proceeding will be undertaken without a disinterested determination of probable guilt." *Id.*

Although Professor Orfield has noted that "[t]he [investigative or] inquisitorial function has been called the more important[,]" *id.*, the grand jury's shield function remains significant. Indeed, it has been said that "[t]he Grand Jury earned its place in the Bill of Rights by its shield, not by its sword." *United States v. Cox, supra,* 342

F.2d at 186 (Wisdom, J., concurring). The grand jury remains

a primary security to the innocent against hasty, malicious and oppressive prosecution ... standing between the accuser and the accused ... to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

*Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). *See* M. Frankel & G. Naftalis, *The Grand Jury* 22, 120 (1977) (stressing protective functions of the grand jury); Wickersham, *The Grand Jury: Weapon Against Crime and Corruption,* 51 A.B.A.J. 1157, 1157–1161 (1965) (same).

A rule that would permit anyone to communicate with a grand jury without the supervision or screening of the prosecutor or the court would compromise, if not utterly subvert, both of the historic functions of the grand jury, for it would facilitate the pursuit of vendettas and the "gratification of private malice." *Charge to Grand Jury, supra,* 30 F.Cas. at 994–995. A rule that would open the grand jury to the public without judicial or prosecutorial intervention is an invitation to anyone interested in trying to persuade a majority of the grand jury, by hook or by crook, to conduct investigations that a prosecutor has determined to be inappropriate or unavailing. The protection of society at large, as well as the preservation of the grand jury as an instrument of justice, requires that the court place limits on direct and unsupervised communications with the grand jury by disgruntled individuals who may have personal axes to grind.

"Runaway grand juries" [12]—a potential result or goal of any rule favoring unsuper-

---

**12.** *See* Frankel & Naftalis, *supra,* at 22, 107–116 (on "runaway grand juries" in "extraordinary situations"). *See also, e.g., Powell to Enter Tax Plea Friday,* N.Y. Times, May 13, 1958 at 24, col. 2; *Buckley Queried on Powell Jury,* N.Y. Times, May 14, 1958 at 24, cols. 2–3 (report of an example of alleged "runaway" federal grand jury investigation of Representative Adam Clayton Powell with respect to which the columnist and publisher William F. Buckley, Jr. was questioned for sending copies of an article to the

federal grand jury but apparently was not criminally sanctionable because foreman had requested him to do so).

Different, but somewhat related, issues are raised by the efforts of an individual grand juror to challenge the exercise of prosecutorial discretion and the collective decision of the grand jury by conducting a personal investigation and later publicly announcing his displeasure with the results of the grand jury process.

vised access to a grand jury—may have a certain romantic allure, but federal law leaves little or no room for that species of romance.

 It is true, of course, that a federal grand jury cannot be compelled to follow a course of action desired by either the prosecutor or by the court, and it is the grand jury that determines whether there is probable cause to believe that an offense has been committed. It is equally true, however, that no grand jury, "runaway" or otherwise, is vested with the discretionary power to determine whether a prosecution shall be commenced or maintained. It is well to remember that the commencement of a federal criminal case by submission of evidence to a grand jury is "an executive function within the exclusive prerogative of the Attorney General," *In re Persico*, 522 F.2d 41, 54–55 (2d Cir.1975); *see also United States v. Chanen*, 549 F.2d 1306, 1312–1313 (9th Cir.1977); that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another[,]" *Leeke v. Timmerman*, 454 U.S. 83, 85–86, 102 S.Ct. 69, 70, 70 L.Ed.2d 65 (1981), *quoting Linda R.S. v. Richard D.*, 410 U.S.

614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973); and that "the decision to prosecute is solely within the discretion of the prosecutor," *id.* at 87, 102 S.Ct. at 71; *see also United States v. Cox, supra*, 342 F.2d at 171. Accordingly, a rule that would afford the general public unsupervised access to the grand jury is a rule calculated to empower the mischievous and the criminal and injure the innocent.

Any person may bring evidence of wrongdoing by a third party to the attention of the federal prosecutor. If a complainant is frustrated by a prosecutor's decision not to prosecute,[13] it does not follow that the complainant should have unsupervised recourse to the grand jury.[14] Because the powers exercised by a grand jury are great, and because they are exercised largely in secret, they are subject to the supervision of a judge, *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972), "to prevent [wrongs] before [they] occur[]." *United States v. Calandra, supra*, 414 U.S. at 346, 94 S.Ct. at 619. If a complainant believes that the prosecutor wrongfully has ignored a legitimate and significant report of illicit conduct, he may make an application to the

*See, e.g., Juror Says Prosecutors Fought Murder Counts*, N.Y. Times, Aug. 25, 1984 at 27, cols. 5–6; *The Merits and Demerits of the Grand Jury System*, N.Y. Times, Sept. 30, 1984 at E6, cols. 2–4. Because the grand juries in this District, and apparently their individual members, have shown no independent interest in this correspondent, no such issues are presented in this case. *See* notes 5 and 7, *supra*. Different questions might be presented if the grand jury had taken the initiative, absent prosecutorial or judicial supervision, to solicit this correspondent's views.

**13.** If the United States Attorney declines to act on information supplied by this particular correspondent, that refusal may well result from characteristic deficiencies in the quality or veracity of the correspondent's allegations and from the fact that his litigation historically has been characterized by deliberate misrepresentations, delusions of persecution, and, more recently, virulent anti-semitism. *See generally* notes 1 and 3, *supra*.

**14.** Limiting access to the grand jury raises the theoretical spectre of a total breakdown of the judicial system in which judges and prosecutors

conspire to prevent certain charges from reaching the grand jury. It was to protect against such institutional aberrations that *Wood v. Georgia, supra*, enunciated First Amendment protection for public criticism of grand juries. *See* note 8, *supra*. In fact, judicial and prosecutorial corruption in the past have generated political pressure resulting in the appointment of special prosecutors who then conducted their own inquiries with the aid of the grand jury. *See, e.g.,* Campbell, *Eliminate the Grand Jury*, 64 J.Crim.L. & Criminology 174, 179, 181 (1973). Non-judicial remedies are always available in the hypothetical and extraordinary situation in which all judicial safeguards have been rendered impotent by massive corruption.

Noting the inherent limits on the grand jury's role in our system of law, Justice Field observed, while instructing the grand jury, that [w]hen the court does not deem [a] matter of sufficient importance to call your attention to it, and the district attorney does not think it expedient to submit the matter to your consideration, ... we think it may be safely inferred that public justice will not suffer, if the matter is not considered by you.

*Charge to Grand Jury, supra*, 30 F.Cas. at 994.

court concerning access to the grand jury. *Charge to Grand Jury, supra,* 30 F.Cas. at 994; *United States v. Kilpatrick, supra,* 16 F. at 769. Private prosecutions vanished from our system of jurisprudence centuries ago, along with trial by battle.[15]

The oft-noted principle that "the public ... has a right to every man's evidence," *see, e.g., United States v. Dionisio,* 410 U.S. 1, 9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973), *Branzburg v. Hayes, supra,* 408 U.S. at 688 & n. 26, 92 S.Ct. at 2660 & n. 26, does not suggest, much less compel, a different result. That principle merely states the historically grounded *obligation* of every person, regardless of rank or station, to appear and give evidence before a grand jury in response to a grand jury subpoena.[16] It does not follow from this principle that individuals have a *right* to appear before a grand jury or otherwise to communicate their views or opinions to a grand jury.

### IV.

Having concluded that there is no right to communicate directly with a federal grand jury, the question remains how to treat the materials conveyed to the Clerk by this particular correspondent.

### A.

The Clerk's Office correctly refused to convey the correspondence to the grand jury in the absence of instructions to do so from the presiding judge. The Clerk acts only as an administrative arm of the court, and the Clerk's Office staff is neither trained nor authorized to exercise independent discretion with respect to communications addressed to a grand jury impanelled by a judge of the court and working closely with the United States Attorney's Office. Neither the Clerk nor his staff may determine independently whether or not a communication may be forwarded to the grand jury. At most, personnel of the Clerk's Office, as agents of the court, may receive a communication addressed to the grand jury and forward it to the appropriate judge.

### B.

Since its enactment in 1872, the statute on jury tampering by written communications has made it a crime to

attempt[] to influence the action or decision of any grand or petit juror of any court of the United States on any issue or matter pending before such juror, or before the jury of which he is a member, or pertaining to his duties, by writing or sending to him any written communication, in relation to such issue or matter....

18 U.S.C. § 1504 (formerly 18 U.S.C. § 243). The statute was amended in 1948 (in the course of a general revision of the criminal laws of the United States) by the addition of a second paragraph:

Nothing in this section shall be construed to prohibit the communication of a request to appear before the grand jury.

The Reviser's Note to the 1948 revision of 18 U.S.C. § 1504—the only legislative history available on this statute—states that "[t]he last paragraph was added to remove the possibility that *a proper request to appear* before a grand jury might be construed as a technical violation of this section." 18 U.S.C.A. § 1504 (West 1966) (emphasis supplied).[17] Unless the corre-

---

**15.** *See generally United States v. Cox, supra,* 342 F.2d at 186–187 (Wisdom, J., concurring); *Charge to Grand Jury, supra,* 30 F.Cas. at 995, n. 3; S. Milsom, *Historical Foundations of the Common Law* 406–410 (2d ed. 1981); *Grand Jury Reform: Hearings on H.R. 94 Before the Subcomm. on Immigration, Citizenship, and International Law of the House Comm. on the Judiciary,* 95th Cong., 1st Sess. 58–64 (1977) ("*Hearings*") (statement of Prof. John Scott, Legal Historian, Rutgers University School of Law).

**16.** *United States v. Dionisio, supra; Branzburg v. Hayes, supra. See also United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950); *Blackmer v. United States,* 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932).

**17.** The second paragraph of the statute that became Section 1504 was added in the context of a complete revision of the federal criminal code (Title 18, U.S.C.) in 1948. *See Legislative History for New Title 18, United States Code Crimes and Criminal Procedure,* 1948, U.S.C.Cong.Serv.

spondent's transmittal letter to the Clerk and the accompanying sealed envelope can be regarded as a "request to appear before the grand jury," they may constitute a violation of 18 U.S.C. § 1504 by the correspondent.

■ It is questionable whether a letter seeking permission to appear before the grand jury without the knowledge of either the prosecutor or the presiding judge can constitute a "proper request to appear" pursuant to the second paragraph of Section 1504.[18] If, as the court has held, prosecutorial or judicial supervision is required,[19] that requirement has not been met here. The transmittal letter and other material at issue were submitted to the Clerk with instructions that they should not be revealed to the prosecutor, and the history of this litigation and the terms of the transmittal letter itself strongly suggest that it also was intended to bypass the judges of this court, and most particularly, the judge to whom all matters involving this correspon-

---

(West) (1948) ("Legislative History"). The Supreme Court has noted that

> The revision of the Criminal Code was ... a a massive undertaking, but, as the Senate Report on that legislation made clear, "[t]he original intent of Congress is preserved." S.Rep. No. 1620, 80th Cong. 2d Sess., 1 (1948).... The House Report stated that "[r]evision, as distinguished from codification, meant the substitution of plain language for awkward terms, reconciliation of conflicting laws, omission of superseded sections, and consolidation of similar provisions." H.R.Rep. No. 304, 80th Cong., 1st Sess., 2 (1947). Revisions in the law were carefully explained in a series of Reviser's Notes printed in the House Report. *Id.*, at Al, *et seq.* ... To read a substantial change in accepted practice into a revision of the Criminal Code without any support in the legislative history of that revision is insupportable. As this Court said in *United States v. Ryder,* 110 U.S. 729, 740 [4 S.Ct. 196, 201, 28 L.Ed. 308] (1884): "It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such an intention be clearly expressed."

*Muniz v. Hoffman,* 422 U.S. 454, 468–470, 95 S.Ct. 2178, 2186–87, 45 L.Ed.2d 319 (1975) (footnote omitted). "The House Report states that '[t]he reviser's notes ... explain in detail every change made in text.' H.R.Rep. No. 304, 80th Cong., 1st Sess., 9 (1947)." *Id.* at 469 n. 9, 95 S.Ct. at 2187 n. 9. *See* Legislative History, *supra,* at 2436–2437 (discussion of the Title 18 revision process and personnel); *Muniz v. Hoffman, supra,* 422 U.S. at 470 n. 10, 95 S.Ct. at 2187 n. 10 (same).

**18.** More recent efforts in Congress to change federal grand jury processes indicate a continuing legislative understanding that the "request to appear" contemplated by the second paragraph of Section 1504 is limited in content and is supposed to be directed to the prosecutor or to a judge prior to transmission to the grand jury.

*See generally* H.R. 94, 95th Cong., 1st Sess. § 6(a) (1977), *reprinted in Hearings, supra,* 964, 976–977 (proposed statute providing that a person may make a written request directed to the prosecutor for an appearance before a federal grand jury; that the prosecutor shall forward such request to the grand jury, along with a recommendation if desired by the prosecutor; and that the grand jury may deny such request to appear); H.R. 3150, 95th Cong., 1st Sess. § 6(a) (1977), *reprinted in Hearings, supra,* 1041, 1053–1054 (same); H.R. 3736, 95th Cong., 1st Sess. § 5(a) (1977), *reprinted in Hearings, supra,* 1149, 1157–1158 (same); H.R. 2620, 95th Cong., 1st Sess. § 4(a) (1977), *reprinted in Hearings, supra,* 1020, 1036 (proposed statute providing that any person may request permission of court to appear before grand jury and that court shall permit appearance "unless such testimony ... would serve no relevant purpose").

One of the major purposes of these bills, each entitled "Grand Jury Reform Act," was to strengthen the grand jury's "independence" from the prosecutor. *See, e.g., Hearings, supra,* at 2–3 (statement of Representative Eilberg, sponsor of H.R. 94). That these bills, designed to "reform" the grand jury system by limiting the influence or role of the prosecutor, assumed and required prosecutorial or judicial oversight of requests to appear before a federal grand jury strongly indicates a well-nigh universal assumption that a direct approach to the grand jury would not be a proper "request to appear" under Section 1504.

**19.** It may be the practice of certain prosecutors occasionally to convey to grand juries materials submitted by a target or complainant without first examining them, if such materials are accompanied by a nonconfidential "request to appear." In such cases, Section 1504 presumably would not be violated, because it is the prosecutor (and not a third party such as the Clerk) who submits the materials to the grand jury following a consideration of the request to appear. This is clearly not the case here.

dent had been assigned many months earlier.[20]

In any case, even if a letter seeking permission to appear before the grand jury without the review of a prosecutor or judge could be a "proper request to appear," this does not appear to be such a case. A transmittal letter asking the Clerk to submit to the grand jury a sealed envelope is simply not a "request to appear." [21]

The question remains whether the actions of the correspondent in this instance violated the prohibitions of the first paragraph of Section 1504, either directly or by attempting to have the Clerk, serving as his agent or conduit, do for this correspondent that which the statute prohibits him from doing directly. The possible violation of 18 U.S.C. § 1504 is a matter for the consideration in the first instance of the United States Attorney, to whom that question should be referred.

### C.

■ Assuming *arguendo* that a transmittal letter such as the one at issue here may be deemed to be an application to the court to convey the attached materials to the grand jury—on the basis that the Clerk is an administrative agent of the court—what standards should govern a judge's decision with respect to the application? It would appear that a judge confronted by such an extraordinary application must, at a minimum, evaluate its *bona fides* and facial sufficiency. Without necessarily making a final determination on the merits or purpose of an application, a judge should make a threshold judgment of whether the correspondence is frivolous or vexatious; whether it appears to be designed "as an instrument for the gratification of private malice," *Charge to the Grand Jury, supra*, 30 F.Cas. at 994–995, or for the purpose of disrupting the system for the administration of justice; and whether the applicant has sought relief from other appropriate law enforcement authorities. How a judge treats any particular communication of this sort will be determined, of course, by the facts of the particular case.

■ In the instant case, the court knows nothing about the projected communication with the grand jury because the envelope addressed to the grand jury and conveyed to the Clerk was sealed by its addressor; the Clerk was informed by the transmittal letter that the sealed envelope is a confidential communication for the grand jury. Accordingly, there is no basis for a judge to make even the minimal threshold determinations suggested above. In these circumstances, it would be appropriate for a judge to reject the application summarily and to direct the Clerk to return the communication in question to its addressor, with an indication that this action is taken pursuant to an order of the judge to whom the correspondence was referred by the Clerk.[22]

### *Conclusion*

The decision to bar the transmission of these materials to the grand jury and to refer the matter to the United States Attor-

---

**20.** The requirement of prosecutorial or judicial supervision cannot be circumvented merely by seeking to convey documents to the grand jury through the Clerk (on the premise that the Clerk is an agent of the court, *see* Section IV. C., *supra*). If such circumvention were to be permitted, the statute would be rendered meaningless, because it would thus be possible to avoid the prohibition of the first paragraph of Section 1504 by the simple expedient of routing the prohibited communication through the Clerk. *See* notes 3, 4, and 5, *supra*, and accompanying text.

**21.** For an example of what may constitute a proper request to appear, *see generally Defendant's Request to be Permitted to Testify Before* *Grand Jury*, McKinney's N.Y.Crim.Proc.Forms § 190.50, Form 5 (Request to appear form used in New York state court, where unlike federal courts, targets and indicted persons have a right under state statute to appear before grand jury; form addressed to grand jury foreman and prosecutor and only mentions existence of investigation and waiver of immunity).

**22.** In this instance, this disposition is amply reinforced by the unambiguous record of this particular correspondent for abuse of legal processes and persistent efforts to obstruct the system for the administration of justice. *See, e.g., In re Martin-Trigona, supra*, 737 F.2d at 1259–1263.

464

ney recognizes the rightful role that the grand jury plays in the administration of our system of justice. The position and integrity of the grand jury in our system of ordered liberty is strengthened by insulating the grand jury from unscreened exposure to those who might use their access to the grand jury for frivolous and vexatious purposes or to disrupt the work of law enforcement authorities. More than a century ago, Justice Field observed that

> an impression widely prevails that the institution of the grand jury has outlived its usefulness, an impression which has been created from a disregard of [the] limits [of the scope of grand jury investigations], and the facility with which it has, unfortunately, often been used as an instrument for the gratification of private malice.

*Charge to Grand Jury, supra,* 30 F.Cas. at 994–995.

Absent the approval of a prosecutor or a judge, a person has no right to communicate directly with a federal grand jury, or to appear before it, unless and until the grand jury requests his appearance. Any future attempts by this correspondent to communicate with a federal grand jury shall be addressed to the United States Attorney or to the judge responsible for the litigation involving this litigant. Moreover, any such communications shall comply with previously established requirements of this court regarding material submitted to a federal forum by this correspondent.[23]

With regard to the question of a possible violation of 18 U.S.C. § 1504, *see* Section IV. B., *supra,* the United States Attorney shall be permitted to examine any of the materials in the captioned files in the Clerk's Office, except for the contents of the sealed envelope that accompanied the transmittal letter to the Clerk. Access, if any, to the contents of the sealed envelope may be obtained only by order of the court upon the filing of an appropriate application accompanied by a memorandum of

law. I intimate no view as to the merits of any such application.

If and when the United States Attorney reports to the Clerk that he has no further need of the materials in question, the Clerk shall convey to this correspondent the original copy of his transmittal letter and the accompanying material. A photocopy of the transmittal letter and of the exterior surfaces of the accompanying sealed envelope shall be retained in the file for future reference.

It is so ordered.

at 1572–1573. *See* note 11, *supra,* and accompanying text.

23. *See* Order of Permanent Injunction, Sections IV., V., *In re Martin-Trigona, supra,* 592 F.Supp.